In re Petition for DISCIPLINARY AC-
TION AGAINST Aldo J. TERRAZAS, an
Attorney at Law of the State of Minne-
sota.

No. CO–97–413.

Supreme Court of Minnesota.

July 16, 1998.

Martin A. Cole, Timothy M. Burke, Sr. Asst. Directors, Office of Professional Responsibility, St. Paul, for director.

Aldo J. Terrazas, Minneapolis, pro se.

## OPINION

**PER CURIAM.**

Aldo J. Terrazas was admitted to practice law in Minnesota in 1988. In 1997 the Director of the Office of Lawyers Professional Responsibility filed a petition and two supplementary petitions for disciplinary action against Terrazas arising out of several incidents occurring from 1995 to 1997. After a 2–day hearing on the petitions, the referee concluded that Terrazas (1) failed to cooperate with the Director; (2) left a panel hearing before it was completed; (3) made misrepresentations to the Director; and (4) threatened a person who had filed a complaint against him. The referee determined that this conduct violated Minn. R. Prof. Conduct 8.1(a)(1) and (3), 8.4(c) and (d), and Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR). The referee also concluded that for more than 2 years Terrazas failed to maintain required trust account and business account books and records in violation of Minn. R. Prof. Conduct 1.15(g) and Lawyers Professional Responsibility Board Amended Opinion No. 9.

The referee recommended that Terrazas be suspended from the practice of law for 90 days and that he be placed on probation for 2 years during which time he must keep all required books and records and make them available to the Director's office at its request. Terrazas asks that this court not include suspension as part of its imposed discipline. Terrazas ordered a transcript of the hearing and contests several of the referee's findings and conclusions. The Director also objects to one of the referee's legal conclusions. While we affirm all of the referee's findings and conclusions, we decline to immediately suspend Terrazas, and instead we order a public reprimand, 2 years probation, and require that Terrazas successfully complete an anger-counseling program. If Terrazas fails to complete the program, a 90–day suspension will be imposed.

Terrazas' misconduct arose out of several incidents between 1995 and 1997 when he was a sole practitioner and the managing partner in a small litigation firm. The incidents are not related to one another, and we briefly address each of them separately.

*A. Failure to Cooperate in the Investigation and Making Misrepresentations to the Director*

The investigation of Terrazas was initiated in September 1995 when the Director re-

ceived notice of a $481.40 overdraft in Terrazas' trust account. The Director sent Terrazas a letter requesting an explanation and copies of Terrazas' trust account statements. Based on the information received, the Director suspected that Terrazas tried to float non-existing funds between his trust account and his personal/business account. At the time of the suspected float, Terrazas' personal/business account had a negative balance.

When the Director received the two checks that were used to make the suspected float, they each contained an annotation designating them as payment from a client. An investigator from the Director's office questioned Terrazas about when the annotations were made. Terrazas informed the investigator that he more than likely made them when he wrote the checks and that he never adds annotations after checks have been negotiated. Notes taken by a Director's office employee during a meeting with Terrazas confirm this statement. However, when the Director obtained copies of checks from the bank as they appeared when presented to the bank, the checks did not contain the annotations. After the hearing, the referee concluded that Terrazas' statements regarding when the check annotations were made were false.

The referee further found that Terrazas was noncooperative and late in supplying information requested by the Director. The Director made repeated requests for information and documents that Terrazas did not fully comply with. A request for certain documents was sent to Terrazas in March 1996 to which Terrazas never responded. Further, Terrazas did not comply with discovery requests until after the court had entered an order for Terrazas to provide the documents. Terrazas called the Director's office and said his response was delayed due to an office move and personal health problems. On May 20, 1996, the Director received another notice of an overdraft in Terrazas' trust account and requested an explanation of this overdraft. Terrazas failed to respond to this request as well.

Terrazas was then given notice of a panel hearing on the charges filed against him.

Terrazas requested a continuance both before the hearing and on the morning of the hearing because of a conflict with scheduled trials and a deposition. The panel denied the request, and Terrazas left the hearing before any testimony was taken.

### B. Making Inappropriate Remarks to a Complainant

In 1995, Vince O'Connor, a former client of the firm that Terrazas managed, filed a complaint against Terrazas. After receiving a notice of investigation regarding the complaint, Terrazas telephoned O'Connor at his home and left the following message on O'Connor's answering machine:

> Vince O'Connor, this is Aldo Terrazas. I just received some correspondence from the Lawyers Professional Responsibility and I'd like to talk to you in person about it. See if you have the nerve to come and talk to me. Give me a call or come into my office because you are going to hear from me.

O'Connor testified that he felt threatened and intimidated by the message.

The District Ethics Committee (DEC) considered and dismissed O'Connor's complaint. Both O'Connor and Terrazas were present at the DEC hearing. The following day, O'Connor sent a letter to the DEC and to Terrazas disputing some statements made by Terrazas at the DEC meeting and accusing Terrazas of lying to the committee and of unethical and irresponsible conduct. Two weeks later, Terrazas wrote to O'Connor warning him that his statements may constitute defamation and advised him to consult a lawyer.

Terrazas threatened O'Connor with litigation even though he was aware that Rule 21, RLPR, provides that a statement made relating to a lawyer's alleged unprofessional conduct is absolutely privileged and may not serve as a basis for liability in any civil lawsuit brought against the person making it. Terrazas asserts, that based on his own research, he believed he had a valid legal basis for threatening to sue O'Connor for defamation. However, the referee did not credit Terrazas' testimony on this issue.

### C. Failing to Maintain Book and Records

It is undisputed that Terrazas failed to maintain proper trust account books and records from January 1, 1995 to May 31, 1997. Terrazas did not maintain monthly trial balances or monthly reconciliations. He did not identify the respective client on deposit slips, and he made two cash withdrawals from his trust account. Terrazas also failed to maintain proper business account records.

### D. The Civil Litigation Matter

During the investigation of Terrazas, the Director discovered a court of appeals decision in a family law case in which Terrazas was a party. No one involved in the family law matter had filed a complaint Terrazas. Nevertheless, an investigator from the Director's office reviewed the entire court file and learned that fees had been assessed against Terrazas, which he had not paid, and that Terrazas had not complied with a discovery request. The Director filed a supplementary petition against Terrazas based on the information from the court file. The referee dismissed the supplementary petition because the investigator, before reviewing the child custody court file, did not comply with Minn.Stat. § 257.70, which regulates the privacy of records in actions brought under the parentage act. Minn.Stat. §§ 257:51–.74 (1996).

### E. Mitigating Factors

The referee also noted that after observing Terrazas' demeanor, credibility, and sincerity, he believed that Terrazas has "recognized his errors, particularly his error in not cooperating with the Director," and he has acknowledged that he has wrongfully let his temper get the best of him. Terrazas testified that he has a personal conflict with the person in the Director's office conducting the investigation and that contributed to his noncooperative behavior. The referee found that Terrazas still holds some animosity towards this individual. Terrazas also claimed that other factors distracted him from the investigation, including the death of an uncle, recurring kidney problems, his family court matter, and his role of helping to manage another law firm while conducting his own practice.

 Terrazas ordered a transcript of the disciplinary hearing and disputes several of the referee's factual findings and legal conclusions. We will uphold a referee's factual findings unless they are clearly erroneous. *In re Dvorak*, 554 N.W.2d 399, 401 (Minn.1996). When facts are in dispute, this court gives great weight to the referee's findings, especially when the dispute arises due to conflicting testimony. *In re Ruhland*, 442 N.W.2d 783, 786 (Minn.1989).

The Director, though not objecting to the dismissal of the supplementary petition, argues that the referee's conclusion that the Board violated Minn.Stat. § 257.70 was clearly erroneous. Minnesota Statutes § 257.70 provides:

> All papers and records, other than the final judgment, pertaining to [a parentage act] action or proceeding, whether part of the permanent record of the court or of a file in the state department of human services or elsewhere, are subject to inspection only upon consent of the court and all interested persons, or in exceptional cases only upon an order of the court for good cause shown.

The Director compared its actions in reviewing the child custody court file to those of a private citizen requesting to review a protected file. In both cases, the Director asserts, the burden to comply with section 257.70 rests with the clerk of appellate courts who maintains the files. Consequently, it would be unfair to hold accountable either the private citizen or the Director.

 We are not persuaded by the Director's analogy. The Director is charged with investigating attorney misconduct and unethical behavior. Necessarily included in such responsibility is a high standard of conduct, including strictly complying with statutes regulating the inspection of privileged court documents. The Director acted directly contrary to section 257.70 when it inspected not only the appellate file, but also the child custody trial court file, without obtaining the consent of the court or of both interested parties. As the referee concluded, the

"legislature has seen fit to protect the privacy of paternity files from intrusion and to provide safeguards" relating to inspection. Therefore, the referee's conclusion that the Board violated the statute is not clearly erroneous and the charge of misconduct involving the civil litigation matter was properly dismissed. In addition, after a careful review of the record, we conclude that there is sufficient evidence to support all of the referee's findings and conclusions and, therefore, we reject Terrazas' contentions that the referee clearly erred in various factual findings and legal conclusions.

 We now turn to the appropriate discipline. The purposes of attorney discipline are to protect the courts, the legal profession, and the public; to guard the administration of justice; and to deter similar misconduct. *In re Dvorak*, 554 N.W.2d at 403. In determining the appropriate discipline, we consider the nature of the misconduct, the cumulative weight of the rule violations, the harm to the public, and the harm to the legal profession. *In re Lochow*, 469 N.W.2d 91, 96 (Minn.1991). The referee recommended that Terrazas be suspended from the practice of law for 90 days and that he be placed on probation for 2 years. A referee's disciplinary recommendation is entitled to great weight, but this court has the final responsibility for determining appropriate sanctions. *In re Pyles*, 421 N.W.2d 321, 325 (Minn.1988).

Regarding the misrepresentations that Terrazas made to the Director, we have stated that "[w]e should not hesitate to impose severe discipline when a lawyer demonstrates a lack of truthfulness and candor to the officers of the judicial system." *In re LaChapelle*, 491 N.W.2d 17, 21 (Minn.1992). While intentional misrepresentations to the Director are serious, the cases resulting in suspension that the Director presents to this court involve misrepresentations that are much more egregious than those in this case. For example, in *In re Jagiela*, the attorney backdated an agreement that he had drafted, gave the agreement to opposing counsel in a bankruptcy proceeding, and then failed to correct the false date in a deposition about the agreement. 517 N.W.2d 333, 334 (Minn.

1994). *See also In re Ward*, 563 N.W.2d 70, 72 (Minn.1997) (lying under oath and permitting a client to lie under oath); *In re Zotaley*, 546 N.W.2d 16, 20 (Minn.1996) (taking generic insurance endorsement form from an unrelated file, submitting the form in an arbitration and holding it out as if it was part of client's insurance policy, and failing to take remedial action after learning arbitrator relied on the form for her decision). The severity of Terrazas' misrepresentations do not rise to the level of the misconduct in these cases. In other cases of misrepresentation, we have imposed lesser sanctions. *See e.g., In re Dowdal*, 284 N.W.2d 394, 394 (Minn. 1979) (submitting to the court an affidavit containing client's forged signature warranted a public reprimand).

 Terrazas' misconduct also includes failing to provide information that the Director requested and leaving a panel hearing. Lawyers who are under investigation for misconduct have a duty to cooperate and failure to do so is grounds for discipline. Rule 25, RLPR. See also Minn. R. Prof. Conduct 8.1(a)(3); *In re Grzybek*, 567 N.W.2d 259, 263–64 (Minn.1997). Failure to attend a panel hearing may also warrant discipline. *In re Thedens*, 557 N.W.2d 344, 350 (Minn.1997). Terrazas claimed that his personal conflict with the investigator added to his noncooperative behavior. The referee was not persuaded by this explanation nor are we. The referee concluded that Terrazas "appears to have a tendency to make strong accusations against people with whom he disagrees or who seek to obtain information from him." An inability to get along with an investigator does not justify noncompliance with the Director's requests for information.

Nonetheless, although Terrazas was noncooperative in the disciplinary process, he admits that he allows his temper to get the best of him and is now remorseful. We also note that Terrazas did cooperate with the Director to some extent. He timely complied with the Director's initial requests for information and continued to maintain at least some contact with the Director throughout the investigation. Likewise, Terrazas initially appeared at the panel hearing, but left

after stating he had a conflict that could not be rescheduled.

■ Furthermore, there are several other circumstances in this case that mitigate in favor of Terrazas. Terrazas testified that he suffered from serious health problems during parts of the investigation and that the death of his uncle during this time contributed to his noncooperative conduct. In addition, Terrazas' misconduct, with the exception of the O'Connor complaint, does not involve client matters. When determining whether discipline is appropriate, we consider the "number of clients harmed, [and] the extent of the clients' injuries.". *In Re Randall*, 562 N.W.2d 679, 683 (Minn.1997). The matter involving O'Connor, who was a former client of the firm that Terrazas managed, was an isolated incident. Finally, Terrazas has no prior disciplinary history, which is another factor we consider when determining proper discipline. *Id.*

Under the circumstances, we conclude that an automatic suspension is not necessary to fulfill the purposes of attorney discipline in this case. We have declined to impose suspensions in prior cases involving misconduct that is more serious than in this case. *See, e.g., In re Haefele*, 508 N.W.2d 780, 780–81 (Minn.1993) (imposing public reprimand and probation for writing trust account checks in excess of client funds; misappropriating earned interest on trust account; paying earned interest on trust account funds without determining each client's share; and failing to maintain proper trust account books and records while certifying that he did); *In re Brudvig*, 503 N.W.2d 102, 102 (Minn.1993) (imposing public reprimand and 2 years supervised probation for unintentionally misappropriating client funds, failing to maintain proper trust account books, other trust account violations, failing to put contingency fee agreement in writing, and neglecting client matters).

We do agree with the referee that some discipline is warranted and we share the referee's concerns about Terrazas' temper. Terrazas may not use his explosive temperament as an excuse for unprofessional behavior. Accordingly, we order that:

1. Respondent Aldo J. Terrazas is publicly reprimanded and is placed on 2 years probation during which time he shall, upon the Director's request, make available to the Director, trust account books and records that he is required to keep under applicable rules and precedent.

2. Respondent must complete an anger-counseling program approved by the Director. Respondent must begin the program within 60 days of the date of this order, complete it in the ordinary course of the program and have no similar complaints during probation. If there are similar complaints during probation or respondent does not complete the anger-counseling program, respondent will be subject to an automatic 90–day suspension on the motion of the Director with supporting affidavits proving the nature of the noncompliance. In addition, respondent will be subject to any further discipline that may be appropriate for future rule violations.

3. Respondent shall pay to the Director $900 in costs and disbursements under Rule 24, RLPR.

So ordered.