In re Petition for DISCIPLINARY AC-
TION AGAINST David T. ERICKSON,
an Attorney at Law of the State of
Minnesota.

No. C1–87–1357.

Supreme Court of Minnesota.

Nov. 14, 2002.

David T. Erickson, Attorney Pro Se, Excelsior, MN, for Appellant's.

Martin A. Cole Acting Director, Timothy M. Burke, Senior Assistant Director, St. Paul, MN, for Respondent's.

## OPINION

PER CURIAM.

In this case we review the sufficiency of the evidence supporting the referee's finding that Respondent David T. Erickson failed to cooperate with the Director of the Office of Lawyers Professional Responsibility in the investigation of a complaint which was ultimately dismissed. We hold

that the Director proved noncooperation by clear and convincing evidence, and that the referee's finding of fact that Erickson "repeatedly and intentionally failed to cooperate with the Director's investigation into alleged misconduct by Respondent" is supported by the evidence. We also review the referee's recommendation that Erickson be publicly reprimanded and placed on unsupervised probation for four years for failing to cooperate with the Director in investigating a complaint which was ultimately dismissed, and we conclude that a stayed suspension from the practice of law for 30 days and unsupervised probation for four years is the appropriate discipline. We impose certain conditions on the stayed suspension and probation period.

Erickson was admitted to the practice of law in Minnesota on October 17, 1969. Erickson's disciplinary history indicates he has been disciplined on five previous occasions. In 1982, Erickson received a warning for failing to appear at an appellate pre-hearing conference, failing to inform the court that he would not appear, and failing to file a notice of withdrawal. Erickson was suspended from the practice of law for 30 days followed by four years of probation in 1987 for failing to timely file state and federal tax returns. *In re Erickson*, 415 N.W.2d 670 (Minn.1987). In 1993, he was suspended for 60 days for neglecting client matters, failing to maintain proper trust account books and records, using his trust account as a personal business account, and failing to cooperate with the disciplinary investigation. *In re Erickson*, 506 N.W.2d 628 (Minn.1993). He was subsequently reinstated and placed on probation for two years. During the probationary period, in 1994, Erickson received an admonition for bringing a motion in bad faith, failing to respond to multiple requests for payment of a sanction, and failing to timely pay the sanction. Finally, in 1996, Erickson received an admonition for

improperly depositing nonrefundable flat fees in his business account, failing to cooperate with the conditions of his probation, and failing to respond to the Director's requests for information.

The current disciplinary matter arises out of a complaint filed with the Office of Lawyers Professional Responsibility by Erickson's daughter, Shelli Koehnen, on October 20, 1999. Koehnen alleged that Erickson had used her maiden name to apply for a credit card and had failed to pay the charges incurred. On October 27, 1999, the Director mailed notice of an investigation to Erickson at his home via regular mail, requesting that Erickson provide his complete written response within 14 days. The letter was not returned, and Erickson did not respond.

On November 18, 1999, the Director sent a second request for a response by certified mail, return receipt requested, to Erickson's home address. This mailing was unclaimed and returned to sender. On December 7, 1999, the Director sent a copy of the complaint to Erickson's business address, a post office box, at Erickson's request. On December 17, 1999, the same day Koehnen called the Director and asked to have her complaint withdrawn, Erickson wrote to the Director that "[t]his is a family matter" that "has been resolved and there is no need for further attention." As Erickson failed to address the allegations of the complaint in his letter, the Director sent a letter to Erickson's business address on December 29, 1999, explaining that the file would remain open and requesting a response within 10 days. Erickson did not respond to this letter, which was sent by regular mail and not returned. The Director sent a follow-up letter by regular mail to Erickson's business address on January 14, 2000. It was not returned to sender; Erickson did not respond.

On February 17, 2000, the Director served Erickson by mail, sent to his business address, with charges of unprofessional conduct and notice of a March 7, 2000 pre-hearing meeting. The accompanying letter notified Erickson that his attendance was required at the prehearing meeting, but Erickson did not attend. A notice and petition for disciplinary action was issued on March 20, 2000. Attempts to personally serve Erickson at his home address were made on March 20, 21, 23, 28, and 30 and on May 18 and 19, 2000. Because the attempts at personal service were unsuccessful, the Director sent copies of the notice and petition by regular mail to Erickson's home address on July 5, 2000. This mailing was unclaimed and returned to sender. The Director sent by regular mail another copy of the notice and petition for disciplinary action and an application and proposed order for suspension under Rules on Lawyers Professional Responsibility (RLPR) Rule 12(c)(1) to Erickson at his home address on July 25, 2000. This mailing was unclaimed and returned to sender.

By order dated August 21, 2000, this court suspended Erickson from the practice of law under RLPR Rule 12(c)(1).[1] A copy of the order was sent to Erickson's home address by regular mail on August 28, 2000. It was unclaimed and returned to sender. On November 13, 2000, upon Erickson's motion to vacate the suspen-sion, we ordered Erickson to "file with the Clerk of Appellate Courts within ten days * * * a valid address for personal service and a signed acknowledgement of service of the petition for disciplinary action." We stated that "[u]pon the filing of these documents, the August 21, 2000, suspension order * * * shall be vacated without further order from [the] court." Erickson served and filed his answer to the petition on December 6, 2000 and was reinstated.[2] The Director served Erickson by mail at his business address with a notice of deposition, and Erickson was deposed on December 20, 2000.

On January 4, 2001, the Director wrote to Erickson, requesting, by January 18, certain information and documents mentioned at the deposition. This letter was sent by regular mail to Erickson's home address, to his business address, to a Prior Lake address where Erickson sometimes stays, and to a Richfield address. Only the letter to the Richfield address was returned as an invalid address, but Erickson did not respond. The Director sent a follow-up letter on January 29, 2001. The letter was sent to Erickson's home, business, and Prior Lake addresses by certified mail, return receipt requested. The copy sent to Prior Lake was received on February 6, 2001, but Erickson did not respond. The Director made a third request for information and documents on March 1, 2001. This letter was sent by

---

1. Rule 12(c)(1) states:
   If the respondent cannot be found in the state, the Director shall mail a copy of the petition to the respondent's last known address and file an affidavit of mailing with this Court. Thereafter the Director may apply to this Court for an order suspending the respondent from the practice of law. A copy of the order, when made and filed, shall be mailed to each district court judge of this state. Within one year after the order is filed, the respondent may move this Court for a vacation of the order of suspen-sion and for leave to answer the petition for disciplinary action.
   Rule 12(c)(1), Rules on Lawyers Professional Responsibility (RLPR).

2. His cover letter to the clerk of court stated that his answer was served "in accordance with your order received this day." Erickson did not include either an acknowledgement of service of the petition nor an address for personal service, but there is no record that the Director objected.

certified mail, return receipt requested, and was received at Erickson's business address on March 16, 2001.

On March 15, 2001, the Director received a letter from Erickson dated February 13, 2001. Because this communication contained only some of the requested information and documents, the Director mailed a fourth request for information and documents on April 18, 2001 to all three valid addresses, via regular and certified mail, return receipt requested. The certified letters were unclaimed, but the letters sent by regular mail were not returned. The Director mailed a letter on April 25, 2001 to all three addresses, by both regular and certified mail, return receipt requested, requesting Erickson's signature authorizing the release of information to the Director regarding the credit card account at issue. Again, the certified letters were unclaimed; the letters sent by regular mail were not returned. A fifth request for information and documents was sent to all three addresses by regular and certified mail, return receipt requested, on May 3, 2001. The certified letters were unclaimed, and the letter sent by regular mail to the Prior Lake address was returned to sender, but the letters sent to Erickson's home and business addresses were not returned. The Director sent a second request for a signature on May 8, 2001. The certified letters, sent to all three addresses, were unclaimed, but the letters sent by regular mail were not returned.

On September 6, 2001, the Director served Erickson by mail with an amended and supplementary petition for disciplinary action which alleged that Erickson failed to cooperate with the Director's investigation through May 2001. This document was sent by regular mail to Erickson's three addresses. Only the mail addressed to the Prior Lake address was returned.

Erickson did not respond. The Director served Erickson with interrogatories, requests for production of documents, and requests for admissions by regular mail sent to Erickson's three addresses on October 4, 2001. No mail was returned. On November 14, 2001, Erickson, the Director's attorney, and the referee had a telephonic scheduling conference. Erickson agreed to comply with all outstanding discovery requests within a short time, and a week later, Erickson faxed the Director his discovery answers. By letter dated November 26, 2001, the Director requested Erickson to provide full and complete responses to all discovery requests as Erickson had not responded to some requests and some responses were insufficient. This letter was faxed to Erickson and mailed, unreturned, to his business address. Erickson did not respond.

On November 30, 2001, the Director served and filed a motion to compel discovery. The motion was scheduled for a telephone hearing on December 17, 2001. Erickson's response to the motion was due December 10, 2001, seven days before the hearing, but Erickson failed to serve or file any responsive papers. By fax and mail dated December 3, 2001, the Director invited Erickson to contact the Director's Office to discuss Erickson's discovery responses. Erickson did not respond until December 14, 2001, the Friday before the scheduled Monday hearing. By order filed December 17, 2001, the referee ordered Erickson to provide interrogatory answers signed under oath, a waiver for credit card records, and all documents regarding the credit card company's lawsuit against Erickson by noon on December 19, 2001. Erickson complied with this order.

The referee granted a continuance at the initial scheduled referee hearing on January 3, 2002, for the Director to arrange for Koehnen's attendance. Koehnen

was not present at the second hearing on February 1, 2002, and, at the end of the hearing, the Director dismissed the allegation against Erickson that he had engaged in unprofessional conduct by obtaining a credit card under false pretenses. During the hearing, the Director offered into evidence documents sent by the Director to Erickson, Erickson's responses, and documentation of Erickson's receipt of the mailings and lack of response. They were admitted into evidence over Erickson's objections.[3] The Director also called Gary Hoese as a witness. Hoese, an employee of the Hopkins Post Office who works at the Minnetonka Carrier's Annex, testified that Erickson's home address is a valid address and that properly addressed mail is returned to the sender when unclaimed. Erickson testified that the addresses used by the Director were correct, and that he believed he had fully cooperated.

Based on the evidence presented, the referee concluded that "[t]he Director [had] proven by clear and convincing evidence that [Erickson] repeatedly and intentionally failed to cooperate with the Director's investigation * * *." Noting that Erickson has been disciplined five times in the past 20 years, two times for failing to cooperate with the investigation of a complaint, the referee recommended that Erickson be publicly reprimanded and placed on unsupervised probation for four years for failing to cooperate.

## I.

▊ Allegations of professional misconduct must be proven by " 'full, clear and convincing evidence.' " *In re Ruhland,* 442 N.W.2d 783, 785 (Minn.1989) (citation omitted). The clear and convincing standard of proof is met "where the truth of the facts asserted is highly probable." *In re Moeller,* 582 N.W.2d 554, 557 (Minn. 1998) (citations and internal quotations omitted). A referee's findings are not conclusive, but are subject to review on the record, however, where, as here, the hearing transcript is ordered. *In re Jensen,* 468 N.W.2d 541, 543–44 (Minn.1991); RLPR 14(e). On review, this court will uphold a referee's findings and conclusions unless they are clearly erroneous. *In re Westby,* 639 N.W.2d at 367. In other words, findings of fact will be reversed " 'only if, upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made.' " *In re Pinotti,* 585 N.W.2d 55, 62 (Minn.1998) (citation omitted). If the referee's findings are supported by the evidence, they will be upheld. *In re Copeland,* 505 N.W.2d 606, 608 (Minn.1993). Furthermore, a referee's findings are given great deference, especially where the findings rest on disputed testimony or on the respondent's credibility or sincerity. *In re Jensen,* 468 N.W.2d at 543.

Erickson argues that the Director has not met his burden of proof because the Director offered no testimony or documents to prove "specific allegations of noncooperation." Therefore, he contends, as the Director did not prove noncooperation

---

**3.** At the referee hearing, Erickson made hearsay and relevance objections to many of the exhibits. On appeal, he does not allege that the referee abused his discretion in admitting the exhibits or in concluding that foundation was sufficient; instead, he contends, *infra,* that the Director did not meet the clear and convincing standard of proof in showing noncooperation. *See In re Westby,* 639 N.W.2d 358, 366 (Minn.2002) (stating that evidentiary rulings will not be reversed absent an abuse of discretion). We conclude that the referee did not abuse his discretion in allowing the exhibits into evidence. *See* Minn. R. Evid. 803(6), (7), (8), (10); Minn. R. Evid. 901(a); Minn. R. Evid. 902(4), (8); Minn. R. Evid. 903; Minn. R. Evid. 1002, 1003, 1005, 1006.

by clear and convincing evidence, the referee's finding of noncooperation is based on speculation and the recommended discipline should not be imposed. He also argues that the exhibits admitted into evidence were excluded by the court as to content and only prove that the Director sent the documents. The Director contends that the record fully supports the referee's finding of fact and conclusion of law that Erickson "repeatedly and intentionally failed to cooperate," violating Minnesota Rules of Professional Conduct (MRPC) Rules 8.1(a)(3) and 8.4(d) and RLPR Rule 25.

■ On this record, we agree with the Director and the referee. Erickson failed to respond to mailings requesting a response delivered to him by mail or received by him via certified mail, dated: December 29, 1999; January 14, 2000; February 17, 2000; July 5, 2000; January 4, 2001; January 29, 2001; April 18, 2001; April 25, 2001; May 3, 2001; May 8, 2001; November 26, 2001; and November 30, 2001. Erickson also failed to respond in the manner requested by the Director. Erickson's response to the notice of investigation did not address the allegations of the complaint and was received about seven weeks after the Director mailed the initial notice of investigation, not within 14 days from receipt of the notice. Erickson provided, on March 15, 2001, some of the discovery documents requested by the Director on January 4, 2001 to be received by January 18, 2001. Additionally, Erickson, who had 30 days from October 4, 2001 to respond to discovery requests, did not respond for approximately 47 days. Furthermore, Erickson failed to answer some interrogatories and failed to produce the requested documents.[4] Erickson also

failed to timely serve or file any responsive papers, due December 10, 2001, to the Director's November 30, 2001 motion to compel discovery. Finally, Erickson failed to appear at the March 7, 2000 prehearing meeting and failed to comply with the conditions in this court's order for vacating his suspension.

Additionally, the exhibits offered at the hearing, which set forth the Director's requests and memorialized Erickson's failure to respond, constitute proof of noncooperation. Except for the first two pages of exhibit 38, a letter written by a postal employee for which the referee sustained a hearsay objection, the referee admitted 44 exhibits for all purposes and cited to them as support for his findings. Only exhibit 16, documents regarding the underlying allegations of credit card fraud, was admitted for the limited purpose that the Director received the documents and that they referred to Erickson.

■ Furthermore, neither direct evidence of Erickson's uncooperative state of mind nor "mechanistic corroboration" of evidence is necessary to meet the clear and convincing standard. *See, e.g., In re LaChapelle*, 491 N.W.2d 17, 21 (Minn.1992) ("[I]n attorney discipline cases, often the only direct evidence available is that known by the attorney."); *In re McDonough*, 296 N.W.2d 648, 692 (Minn.1979) (concluding in judicial disciplinary case that "uncorroborated evidence may be clear and convincing if the trier of fact can impose discipline with clarity and conviction of its factual justification."); *see also In re Gillard*, 271 N.W.2d 785, 805 n. 3 (Minn.1978) (adopting the attorney disciplinary proceeding "full, clear and convinc-

---

4. Erickson ultimately provided interrogatory answers and produced the requested documents in compliance with the referee's De-

cember 17, 2001 order to comply with discovery requests.

ing" standard of proof for judicial disciplinary decisions).

We conclude there is ample evidence in the record to prove by clear and convincing evidence that Erickson consistently failed to respond to the Director or supply him· with requested information. We agree with the referee's statement that "[i]t is impossible to view [Erickson's] behavior in this case as anything other than an attempt to ignore the Director's investigation * * * " and decline to set the referee's finding of fact aside. We hold that the referee's finding that Erickson "repeatedly and intentionally failed to cooperate with the Director's investigation into alleged misconduct by Respondent" is supported by the evidence.

## II.

■■■ In determining the appropriate discipline to impose, we look to similar cases for guidance and consider the nature of the misconduct, the cumulative weight of the rule violations, the potential harm to the public, and the harm to the legal profession. *In re Sigler,* 512 N.W.2d 899, 901 (Minn.1994); *In re Getty,* 452 N.W.2d 694, 698 (Minn.1990); *In re Jones,* 383 N.W.2d 303, 306 (Minn.1986) (considering "the nature of the ethical violations, the specific acts committed, any risk the public may be harmed if counsel is permitted to continue in the profession, and the preservation of the integrity of the bar as well as the system for the administration of justice."). Additionally, when an attorney is before this court on a subsequent disciplinary charge, "the discipline to be imposed must be reviewed in light of the earlier misconduct." *In re Getty,* 452 N.W.2d at 698. This court gives great weight to a referee's recommendation but makes the final determination of discipline. *In re Terrazas,* 581 N.W.2d 841, 845 (Minn.1998); *In re Getty,* 452 N.W.2d at 698.

■■■ We reiterate that because attorneys have an ethical duty to cooperate with the Director in investigating and resolving any complaints of unprofessional conduct, noncooperation with a disciplinary investigation is a serious offense which may warrant suspension. *In re Olson,* 545 N.W.2d 35, 38 (Minn.1996) (quoting *In re Walker,* 461 N.W.2d 219, 223 (Minn.1990)). In the past, we have suspended attorneys for failure to cooperate. For example, in *In re Flatten,* an attorney who was previously admonished for noncooperation in a disciplinary investigation failed to respond to repeated inquiries from the Director regarding a trust account overdraft over several months, failed to attend a prehearing meeting, and failed to cooperate in any manner in the disciplinary proceedings. 611 N.W.2d 340, 341 (Minn.2000). We held that indefinite suspension from the practice of law was the appropriate sanction. *Id.* at 342–43. Similarly, in *In re Engel,* the attorney had previously received an admonishment for neglect of a probate matter, failing to communicate adequately with clients, and failing to timely respond to investigators' inquiries. 538 N.W.2d 906, 906 (Minn.1995). This court held that the attorney's instant failure to respond to complaints of unprofessional conduct and failure to cooperate with any of the Director's efforts to investigate those complaints warranted an indefinite suspension from the practice of law. *Id.* at 907. Finally, in *In re Cartwright,* the attorney, over about two years' time, repeatedly refused to cooperate with disciplinary authorities concerning ethical complaints filed against him. 282 N.W.2d 548, 551–52 (Minn.1979). He committed additional ethics violations by borrowing $10,800 from his cousin but failing to secure it as promised and failing to repay it in full. *Id.* at 550–51. We suspended

Cartwright's license to practice law for six months. *Id.* at 552.

Depending on the extent of the failure to cooperate and on the particulars of the case, noncooperation may not justify suspension from the practice of law, however. In *In re Stanbury*, an attorney with a substantial disciplinary history failed to cooperate with the Director in a disciplinary investigation for ten months but cooperated thereafter. 614 N.W.2d 209, 210–12 (Minn.2000). This court publicly reprimanded Stanbury and placed him on unsupervised probation for two years. *Id.* at 214. In *In re Terrazas*, the Director initiated an investigation of Terrazas when he received notice of an overdraft in Terrazas' trust account. 581 N.W.2d at 842–43. The referee found that Terrazas made false statements to the investigator regarding annotations on checks, did not respond or did not comply fully to repeated requests for information, did not comply with discovery requests until the court entered an order compelling discovery, and left a panel hearing. *Id.* at 843. We noted mitigating factors, ordered anger management counseling, and publicly reprimanded Terrazas and placed him on two years' probation. *Id.* at 845–46.

■ Based on the discipline imposed in the above cases and the unique circumstances of Erickson's case, and considering the referee's recommended discipline, we conclude that the appropriate discipline for Erickson's misconduct—substantial and lengthy, but not complete, noncooperation—is 30 days' suspension, stayed, and four years of unsupervised probation. We impose the following conditions on the stayed suspension and probation period:

1. Respondent David T. Erickson shall file and serve on the Director a valid address within the state for personal service [5] within ten days. Respondent shall file and serve on the Director any future change in address;

2. Respondent shall abide by the Minnesota Rules of Professional Conduct;

3. Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation and shall respond promptly to the Director's correspondence by the due date. Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct which may come to the Director's attention. Upon the Director's request, Respondent shall provide authorization for release of information and documentation to verify compliance with the terms of this probation;

4. If Respondent violates any of the conditions of this order before the expiration of the four-year probation period, he will be subject to immediate and automatic revocation of the stay of the suspension, and the 30–day period of suspension shall be imposed. If Respondent, after serving the suspension period, seeks reinstatement, reinstatement shall be pursuant to RLPR Rule 18;

5. Respondent shall pay to the Director the sum of $900 in costs and disbursements pursuant to RLPR Rule 24.

So ordered.

---

**5.** To satisfy this condition, we require an address where Respondent can be found. *See* Minn. R. Civil P. 4.03 ("Service of summons within the state shall be as follows: (a) Upon an individual. Upon an individual by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein.").