In re Petition for DISCIPLINARY AC-
TION AGAINST Kenneth M. HOLK-
ER, a Minnesota Attorney, Registra-
tion No. 46267.

No. A06–896.

Supreme Court of Minnesota.

May 3, 2007.

Timothy Michael Burke, Saint Paul, MN, for Petitioner.

Edward F. Kautzer, Saint Paul, MN, for Respondent.

## OPINION

PER CURIAM.

This attorney discipline case arose out of a petition filed by the Director of the Office of Lawyers Professional Responsibility against respondent Kenneth M. Holker alleging numerous violations of the Minnesota Rules of Professional Conduct and the Minnesota Rules on Lawyers Professional Responsibility (RLPR). After a hearing, the referee concluded that Holker had violated the following Rules of Professional Conduct as in effect before October 1, 2005: 1.3 (failing to act diligently in representing a client); 1.4 (failing to adequately communicate with the client); 1.15(a), as further interpreted by Lawyers Professional Responsibility Board Opinion No. 15 (failing to deposit client funds in a trust account); 1.15(b) (making early withdrawals from client funds before legal fees were earned); 1.15(c)(4) (failing to promptly deliver client funds as requested); 1.16(d) (failing to protect client interests upon termination of representation); 8.1(a)(1) (knowingly making false statements in connection with a disciplinary proceeding); 8.1(a)(3) (knowingly failing to respond to the director's demand for information); 8.4(c) (engaging in conduct that is dishonest); and 8.4(d) (engaging in conduct that is prejudicial to the administration of justice). In addition, the referee concluded that Holker violated Rule 25, RLPR, by failing to cooperate with the director's investigation. The referee recommended a six-month suspension and that Holker be required to petition for reinstatement. We adopt the referee's recommendation.

In October 1977, Holker was admitted to practice law in Minnesota. For more than 15 years, his practice has been limited to estate planning and probate. Prior to this discipline action, Holker was admonished five separate times for: (1) failing to return client files (1982); (2) failing to timely pay interest accruing in a pooled client trust account to the Lawyers Trust Account Board (1990)[1]; (3) charging interest on legal fees without making adequate disclosures (1991); (4) failing to pay for advertisements that had been published in newspapers (1995); and (5) failing to adequately explain to clients the basis of his legal fees and using an inappropriate fee agreement (1998). In addition, on February 4, 2000, Holker was publicly reprimanded by this court and placed on probation for failing to timely file federal and state individual income tax returns, failing to timely file federal and state employer quarterly tax returns and failing to timely pay withholding taxes. *In re Holker,* 605 N.W.2d 104 (Minn.2000).

---

1. This court affirmed Holker's admonition on December 28, 1990. *In re LMN,* 463 N.W.2d 902 (Minn.1990).

The current allegations stem from Holker's representation of one client. On April 2, 1997, a day after her sister passed away, the 78–year–old client contacted Holker about representing her in her role as personal representative of her sister's estate. The client signed a retainer agreement with Holker on April 18.

The director claims that Holker failed to act diligently and to adequately communicate with the client to ensure that estate and income tax returns were prepared and timely filed. Holker faults the client for the untimely returns. In March 2001, Holker retained an accountant to prepare the unfiled tax returns for the estate. The director alleges that Holker failed to diligently provide the accountant with the information and documents necessary for the accountant to prepare the returns.

The director also claims that Holker failed to diligently request from the client the information necessary to commence the probate proceeding. The director claims that the information necessary to commence the proceeding was not requested until February 1999 and Holker concedes that the probate proceeding was not commenced until August 1999—more than 27 months after the sister's death. Holker does not dispute that from June 1997 through February 1998, and from May through December 1998, he failed to work on the client matter and failed to communicate with the client.

Holker admits that during his representation of the client, he paid himself from estate funds in an amount greater than the estate owed him for legal fees and expenses, and he failed to hold the unearned fees in a trust account.

In June 2003, the client retained R.H. to replace Holker as counsel for the estate. On June 27, R.H. requested that Holker forward the client's file and all estate funds remaining in Holker's trust account.

The file was not given to R.H. until July 24, when R.H.'s law clerk picked up "the file." The law clerk presumed that he received the "complete file."

On July 18, 2003, R.H. filed a disciplinary complaint against Holker, alleging that Holker failed to commence and complete the client's probate matter promptly, resulting in an increased tax liability to the estate. R.H. also alleged that Holker had liquidated many of the estate's stock holdings without adequate communication with the client. In November, R.H. provided the director with a copy of the client's file that he had received from Holker.

On August 18, 2004, Holker met with the director's office and was questioned on a number of issues regarding the client's case. The file Holker had provided to R.H. did not contain correspondence between Holker and the client addressing several of the issues that were discussed. Holker told the director's office that R.H. had not received a copy of the entire client file because R.H.'s law clerk had left a "couple stacks" of things behind at Holker's office. The director's office requested that Holker produce the additional file materials that were allegedly left behind. Four months later, Holker provided the director's office with five letters from Holker to the client that were not included in the file that Holker originally provided to R.H. The director alleges that each of these letters was fabricated.

 Holker ordered a transcript of the referee's hearing, thereby preserving his right to challenge the referee's factual findings. Rule 14(e), RLPR. Nevertheless, this court will only set aside the referee's findings in a disciplinary action if "upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made." *In re Pinotti,* 585 N.W.2d 55, 62 (Minn.1998). "Allegations of professional misconduct must be proved by clear and

convincing evidence." *In re Moeller,* 582 N.W.2d 554, 556 (Minn.1998).

Holker does not challenge the referee's findings that he violated Minn. R. Prof. Conduct 1.15(a) and (b) by failing to deposit client funds in a trust account and paying himself legal fees before they were earned. He also does not explicitly challenge the referee's finding that he violated Minn. R. Prof. Conduct 1.15(c)(4) by failing to promptly deliver client funds as requested.

*Minn. R. Prof. Conduct 1.3 and 1.4*

■ Rule 1.3 requires that a lawyer "act with reasonable diligence and promptness in representing a client." Rule 1.4(a) provides that a lawyer must "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." The director argues that Holker's failure to ensure that the estate and income tax returns were timely filed and to timely commence the probate proceeding demonstrate Holker's failure to act diligently and to communicate with the client.

Holker does not dispute that the estate and income tax returns were untimely filed. But Holker faults the client for failing "to act diligently or promptly in providing * * * the documents and information" needed to timely prepare the tax returns. There is ample evidence to support the referee's findings that Holker bears responsibility for the late filing of the returns.

First, Holker's billing statement indicates that in April 1997 he discussed with the client "possible estate and income tax ramifications" and the "importance of completing [the] last four years income tax returns." Yet, from June 1997 through February 1998, a nine-month period, and from May through December 1998, an eight-month period, Holker has no record of working on the client's case or communicating with the client.

Second, the fee agreement between Holker and the client states that Holker was going to work on the "Probate Estate" of the client's sister. The fee agreement does not discuss who would take responsibility for tax matters related to the estate.

Third, Holker testified that the client told him that Robert Chase, a long-time friend of the client, would be handling all unfiled estate and income tax returns. Holker argues that he acted with reasonable diligence because the client had hired Chase to do the tax preparation work for the estate, and Holker was simply "waiting for Chase to complete his work." But Holker could not recall having any communications with Chase and, as mentioned above, Holker had little to no communication with the client. Holker did not even attempt to contact Chase until December 2000, when he learned that Chase had passed away in mid–2000.

After hearing of Chase's death, Holker hired an accountant to prepare all of the unfiled tax returns. The accountant testified that he was hired to work for Holker, not the estate, and that he understood that he had to go through Holker to get information from the client. The accountant testified that in May 2001, he sent Holker a list of items he needed for the 1994 income tax return, which Holker failed to provide. The accountant's testimony is supported by (1) Holker's billing statement, which indicates that in May 2001, Holker received the accountant's request; and (2) the absence of a record showing that Holker provided the requested information. The accountant renewed his request in April 2002.

Fourth, Holker admitted that he failed to commence the probate proceeding until August 1999, more that 27 months after the sister's death.

Finally, Holker does not dispute that the client "was extremely—at times, uncont-

rollably—distraught, in a pronounced state of depression and unable to handle the affairs of her sister's estate." Therefore, it would not have been reasonable for Holker to rely on the client to compile all relevant information and documentation for completion of the tax returns.

We conclude that the evidence supports the referee's finding that Holker violated Rules 1.3 and 1.4.

### Minn. R. Prof. Conduct 1.16(d)

■ Rule 1.16(d) requires that "[u]pon termination of representation, a lawyer shall take steps * * * to protect a client's interests, such as * * * surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

Holker disputes the referee's finding that he failed to provide the client's entire file to the client's new lawyer, R.H. He claims that R.H.'s law clerk failed to take the entire file.[2] The law clerk testified that he went to Holker's office, where he picked up the file after someone said that "the file" was ready. As the law clerk understood it, "what [he] had was the complete file." Holker's secretary testified that she was responsible for photocopying the client's file to transfer to R.H.'s office, and the law clerk took "everything [she] had photocopied."

We conclude that the evidence supports the referee's finding that Holker violated Rule 1.16(d).

### Minn. R. Prof. Conduct Rules 8.1(a)(1) and (3) and 8.4(c) and (d)

■ Rule 8.1 requires that a lawyer, in connection with a disciplinary matter, must not "knowingly make a false statement of material fact[,] * * * or knowingly fail to respond to * * * [the director's] lawfully authorized demand for information." Rule 8.1(a)(1), (3). Rule 8.4 states that it is misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation" and "conduct that is prejudicial to the administration of justice." Rule 8.4(c), (d).

The director alleges that Holker fabricated five documents that were not contained in the file provided to R.H. and were delivered to the director months after his meeting with Holker to review the file. Holker asserts that the originals of these documents had been damaged or destroyed and that he had to recreate them when it became clear that they were missing from the file. Holker's daughter testified that she was given the client's file by Holker in "July of 2003 to clean up because it[ ][was] damaged."[3] The daughter testified that she copied documents that were "smeared or wrinkly." She also testified that some documents were too damaged to copy, so she reprinted them from a computer disk that contained documents related to the client's file. She testified that she was given all of the letters in the client's file, but not every letter needed to be reprinted or retyped. She could not remember photocopying, reprinting, or retyping any of the five documents in question.[4]

---

**2.** R.H. requested "all the files and records" pertaining to the client's case on June 27, 2003. On July 9, this request was renewed in a follow-up letter requesting that Holker respond to the June 27 letter. On July 18, R.H. contacted the Office of Lawyers Professional Responsibility, requesting assistance in obtaining the client's file and the remaining unused funds, which still had not been made available to him or the client. On July 21,

Holker's secretary sent a fax to R.H. indicating that he could pick up "the file" on July 24.

**3.** The daughter testified that she helped "clean up" several files that were damaged in a tornado in 1997.

**4.** Holker's secretary testified that Holker told her that he had fallen and the client's file

The referee found that the letters were fabricated based on the following facts:

a. Each of these letters purports to address an issue [Holker] was specifically asked about during the August 18 meeting [with the director].

b. The December 7, 1998, letter shows a "763" area code with [Holker's] telephone number. However, the 763 area code did not go into effect until February 2000, more than a year later.

c. The March 1, 2001, letter shows a "612" area code with [Holker's] telephone number. However, the 612 area code ceased to be in effect in that area on January 14, 2001. Additionally, other letters written before and after that date reflect the 763 area code.

d. Each of the letters bears a return address formatted differently from other letters written during the same period as the letters in question.

e. Each letter fails to reflect [Holker's] post office box number, which appears on all of the letters in the file that [Holker] provided to [R.H.] that were written during the same period.

Holker argues that the referee did not make his finding that the letters were fabricated on the basis of clear and convincing evidence. Although the referee found that the letters "appear" to have been fabricated, we are satisfied that the referee did in fact find by clear and convincing evidence that Holker fabricated those letters. The referee supported the finding by the five specific subfindings quoted above. Further, the referee made other findings that were based on the conclusion that the five letters had been falsified. The referee found that Holker had failed to communicate with the client from June 1997 through February 1998, and from May through December of 1998. One of the five letters was dated December 7, 1998, and fell within this period. The referee found that Holker had failed to request the names and addresses of the beneficiaries from the client until February 1999. One of the letters purports to ask for this information on April 25, 1997. And the referee found that none of the documents in the original file that had been produced to the director contained any damage. Finally, the referee made the conclusion of law that Holker had engaged in conduct that is dishonest and prejudicial to the administration of justice.

We conclude that the evidence supports the referee's finding that Holker violated Rules 8.1(a)(1) and (3), and 8.4(c) and (d).

### Rule 25, RLPR

■ Rule 25(a)(1) requires that a lawyer "who is the subject of an investigation" cooperate with the director "by complying with reasonable requests, including requests to [f]urnish designated papers, documents or tangible objects." Rule 25(b) specifically states that violation of the foregoing requirement is unprofessional conduct and shall constitute a ground for discipline. *Id.*

Holker disputes that he failed to cooperate with the director's investigation, stating that any "perceived" lack of cooperation is primarily attributable to his lawyer's "unavailability and apparent inability" to provide the documents the director requested. The record supports the referee's finding that Holker failed to cooperate with the disciplinary investigation.

At the August 18, 2004 meeting between Holker, his lawyer, and the director, Holker told the director that he would provide the documents that R.H.'s law clerk had allegedly failed to retrieve. On August 20, the director wrote to Holker's lawyer re-

---

"went everywhere into the mud." The secretary also testified that she had no recollection of ever "doing anything" to help clean up the client's file.

questing that those documents be provided by August 30. The director renewed this request on September 1 and 8. Finally, on September 23 the director wrote to Holker specifically requesting that Holker call the director when he received the director's letter. Holker did not respond until December 30, when he sent a letter enclosing the documents from the client's file that Holker claimed had been left behind by R.H.'s clerk.

Holker failed to provide other documents that the director had requested on August 20, 2004. The director repeated his request for those documents on January 19, January 24, and February 23, 2005. On March 11, Holker's new lawyer provided some of the requested documents, but failed to provide others. After two more requests, Holker's lawyer finally produced the remaining documents on April 12.

We conclude that the evidence supports the referee's finding that Holker violated Rule 25.

*Aggravating Factors*

■ Holker challenges the referee's finding that Holker's disciplinary history was an aggravating factor. Holker argues that because four of the five admonitions are over 10 years old and none of the prior discipline is related to the current matter, his prior discipline does not aggravate his misconduct. This argument is unpersuasive.

■ A lawyer's prior disciplinary history is relevant to determine an appropriate sanction. *See In re Gherity*, 673 N.W.2d 474, 480 (Minn.2004). Holker has previously received five private admonitions and one public reprimand. The mere fact that Holker has been disciplined six prior times suggests that he has not renewed his "commitment to comprehensive ethical and professional behavior." *See In re Isaacs*, 451 N.W.2d 209, 212 (Minn.1990) (quotation omitted). And the conduct for which

Holker was previously disciplined is not dissimilar to the conduct in the current matter: in 1982, he was admonished for failing to return files; in 1990 he was admonished for violating accounting practices; and in 2000 he was publicly reprimanded for failing to timely file income tax returns and employer quarterly returns, and failing to timely pay withholding taxes.

Holker also challenges the referee's finding that the fact that Holker is an experienced lawyer in the area of estate planning constitutes an aggravating factor. But, in *In re Moeller*, we accepted the referee's conclusion that a lawyer's substantial experience in the practice of law was an aggravating factor. 582 N.W.2d at 559–60; *see also In re Oberhauser*, 679 N.W.2d 153, 160 (Minn.2004) (considering the fact that the lawyer was "an experienced attorney").

The referee also found that Holker does not take responsibility for his misconduct, but faults others. We have said that a failure to acknowledge or express remorse for disciplinary violations is an aggravating factor. *In re Nathan*, 671 N.W.2d 578, 585 (Minn.2003).

■ The referee recommended indefinite suspension for a minimum of six months with the requirement that Holker petition for reinstatement. Although we place great weight on the recommendation of the referee as to discipline, we retain the final responsibility for determining the appropriate sanction. *In re Oberhauser*, 679 N.W.2d at 159. In making that determination, we consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Jagiela*, 517 N.W.2d 333, 335 (Minn.1994).

*Nature of Misconduct*

The director cites three cases, among others, that demonstrate similar sanctions for similar misconduct: *In re Wood,* 716 N.W.2d 341 (Minn.2006); *In re Peterson,* 620 N.W.2d 29 (Minn.2000); and *In re Salmen,* 484 N.W.2d 253 (Minn.1992). We agree that these cases support an indefinite suspension for a minimum of six months for Holker's misconduct.

Holker argues that his case is more similar to other cases where lesser discipline was ordered, citing among other cases: *In re Stanbury,* 614 N.W.2d 209 (Minn.2000); *In re Terrazas,* 581 N.W.2d 841 (Minn.1998); and *In re Thedens,* 557 N.W.2d 344 (Minn.1997). In *Stanbury* we ordered public reprimand and two years of unsupervised probation for the lawyer's failure to cooperate with the director. 614 N.W.2d at 214. But that case is not comparable because Stanbury's failure to cooperate was the only violation before the court. In *Terrazas* we likewise ordered public reprimand and two years of probation, and there were rule violations in addition to the failure to cooperate with the director, but Terrazas did not have an adverse disciplinary history and there were several mitigating factors. 581 N.W.2d at 841, 845–46. Finally, *Thedens* actually supports the referee's recommendation because we ultimately ordered a six-month suspension for misconduct involving the failure to attend a panel hearing, liability for a civil tax-fraud penalty, failure to timely file federal and state income tax returns, and neglect of a single client matter. 557 N.W.2d at 344–45, 350.

### Cumulative Weight

Next we consider the cumulative weight of Holker's violations. Holker's misconduct is serious, warranting strong discipline. *See, e.g., In re Samborski,* 644 N.W.2d 402, 407 (Minn.2002) (stating that by itself, noncooperation with the disciplinary process may warrant indefinite suspension and in connection with other misconduct, noncooperation increases the severity of the disciplinary sanction); *In re Singer,* 541 N.W.2d 313, 315 (Minn. 1996) (noting that failing to keep proper trust account records, and failing to cooperate with or misrepresenting facts to a disciplinary investigator, are significant breaches of professional conduct standards).

### Harm to Public and Profession

Finally, we must consider the harm to the public and legal profession. Holker's misconduct was partly directed against an elderly woman, who was clearly distressed over her sister's death. There is great public concern over protecting vulnerable persons. *See, e.g., In re Benson,* 431 N.W.2d 120, 124–25 (Minn.1988) (disbarment ordered where lawyer's misconduct was directed at an elderly, dependent person who was a lifelong friend of the lawyer). And Holker's attempts to conceal his misconduct diminish the integrity of the disciplinary process and the profession as a whole. *See, e.g., In re Margolis,* 570 N.W.2d 688, 688, 692 (Minn.1997) (ordering a one-year suspension for forgery, attempted unauthorized settlement of client's case, making false statements, and fabricating documents).

For the above reasons, we conclude that the record fully supports the referee's factual findings, legal conclusions, and recommendation for discipline. We therefore hold that Holker's misconduct warrants the discipline recommended by the referee.

Accordingly, we order that:

1. Respondent Kenneth M. Holker is indefinitely suspended from the practice of law in the State of Minnesota, commencing 20 days from the date of this decision, and is ineligible to apply for reinstatement for a minimum of six months after suspension;

2. Holker shall comply with the notice requirements of Rule 26, RLPR;

3. Holker shall pay to the director $900 in costs and disbursements, pursuant to Rule 24, RLPR; and

4. If Holker seeks reinstatement, he shall also comply in all respects with Rule 18, RLPR.

So ordered.

ANDERSON, G. BARRY, J., took no part in the consideration or decision of this case.