In re Petition for DISCIPLINARY AC-
TION AGAINST John G. GANLEY, an
Attorney at Law of the State of Minne-
sota.

No. C4–95–1379.

Supreme Court of Minnesota.

June 13, 1996.

John Gregory Ganley, Minneapolis, pro se.

Marcia A. Johnson, Director, Lawyers Pro-
fessional Responsibility Bd., Henry C. Grani-
son, Asst. Director, LPRB, St. Paul, for Re-
spondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Pro-
fessional Responsibility filed a petition for
disciplinary action against respondent John
G. Ganley. The petition makes three claims:
trust account violations of Minnesota Rules
of Professional Conduct, Rule 1.15(a)(2) and
(e), and Opinion 15 of the Lawyers Profes-
sional Responsibility Board; false notariza-
tion in violation of Minn. R. Prof. Conduct,
Rule 3.3(a)(1) and (4), and 8.4(b), (c) and (d);
and misrepresentation in violation of Minn.
R. Prof. Conduct, Rule 1.4 and 8.4(c). The
Director recommended a two-year suspen-

sion. We agree that Mr. Ganley should be suspended, but two years is not warranted by the evidence of misconduct in this case.

Ganley was admitted to practice law in Minnesota in October 1987. For the last few years, Ganley has been working as a sole practitioner practicing mostly family law. Ganley testified that the majority of his clients are lower income individuals and he has also worked with the federally-funded Judicare program handling indigent clients and performing pro bono work.

In September 1992, Wendy Jo Gertjejanssen was referred to Ganley by his sister. She asked him to assist her in her divorce. They met in his office on September 18, 1992 and discussed his fee structure—$400 flat fee for uncontested divorces and $50/hour for contested divorces. She signed a retainer agreement that stated that she would be responsible for the flat fee and any court costs. She then paid Ganley $220—$100 toward his flat fee and $120 for the filing fee. On September 23, 1992, Gertjejanssen paid Ganley an additional $250 for what she thought was payment in full of a reduced rate on the original flat fee of $400. Ganley never deposited any of this money in a trust account, nor did he pay the filing fee to the court.

Ganley drafted a petition and marital termination agreement and a waiver of counsel for Gertjejanssen's husband, Ole R. Gram, to sign, based on her alleged statements that he would not contest the divorce. After Gram was served, he refused to sign the marital termination agreement and hired an attorney.

There were alleged, though undocumented, telephone conversations between Ganley and Gertjejanssen concerning her case. Meanwhile, Ganley and Gram's attorney attempted to negotiate a settlement. When Ganley approached Gertjejanssen about additional money because the "uncontested" divorce had become contested, she refused to pay and Ganley suggested she petition for *in forma pauperis* (IFP) status with the court. The application for IFP is the main issue.

Ganley sent Gertjejanssen a form to complete and sign. There is undisputed evidence that after he received the form back from Gertjejanssen, he made several changes. He notarized it without her signing the form in his presence. He changed the income figure to reflect a sum that guaranteed Gertjejanssen would receive the IFP status. He used correction fluid and "doodled" on a formal court affidavit. Ganley then filed that form with the court.

Ganley never notified his client that the court had approved her IFP status and she would not be required to pay the costs in her divorce case. Gertjejanssen received this information from the court clerk.

When Ganley was contacted by Gertjejanssen regarding her case, they argued over the $120 filing fee that she now knew had not been paid. Ganley told her he had kept the money because he "deserved the $120."

Gertjejanssen filed a complaint. A hearing was held on September 22, 1995 where testimony was given and exhibits were presented. Ganley admitted his error in not depositing the money in a trust account and in notarizing the affidavit that was not signed in his presence. He denied that he misrepresented facts to either his client or the court. He denied that there was intentional fraud committed against both the client and the court regarding the IFP form and the filing fee of $120. After the hearing, the referee recommended suspension up to six months, successful completion of the Multistate Professional Responsibility Exam and payment of $500 costs.

Ganley disputes the referee's findings of fact and conclusions of law as being clearly erroneous and unsupported by the evidence. In addition, Ganley contends probative and relevant evidence was ignored by the referee.

■ In disciplinary hearings, this court will not overturn the referee's findings of fact and conclusions of law unless clearly erroneous. *In re McGrath*, 462 N.W.2d 599, 600 (Minn.1990). Yet, while great weight may be given to the recommendations of the referee, the final responsibility for determining the appropriate discipline lies with this court alone. *In re Klein*, 442 N.W.2d 317, 321 (Minn.1989).

■ Minn.R.Prof.Conduct 3.3(a)(1) and 3.3(a)(4) state that "A lawyer shall not knowingly: (1) make a false statement of fact to a tribunal * * * or (4) offer evidence that the lawyer knows to be false." Ganley argues that he did not make a false statement to the court because he simply told the court that his client was unemployed. He also argues that the affidavit in question was changed only after consultation with his client and her approval. However, he offers no evidence of this exchange.

■ Suspension is warranted when the lawyer knowingly engages in conduct that violates a duty to the profession and causes injury to the client, the public, or the legal system. *ABA Standards for Imposing Lawyer Sanctions*, Standard 7.2 (1991). Here, Ganley admitted that he falsely notarized his client's affidavit. In addition, Ganley admitted that he made changes to the affidavit without sending a copy of the changes to his client and then submitted the altered document to the court.

In *In re Holmay*, 399 N.W.2d 564 (Minn. 1987) the attorney was given a 30–day suspension for forging a client's signature and falsely notarizing it on a petition for dissolution of marriage. *Id.* at 565. Under the circumstances related to the affidavit alterations regarding Gertjejanssen's income for the IFP petition, it does not seem unreasonable that a suspension for such action is warranted.

Minn.R.Prof.Conduct 1.4, states:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions * * *.

■ Minn.R.Prof.Conduct 8.4(c), states "It is professional misconduct for a lawyer to: * * * (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." We have generally issued more serious discipline for misrepresentation. This court held "[w]e should not hesitate to impose severe discipline when a lawyer demonstrates a lack

of truthfulness and candor * * *." *In re LaChapelle*, 491 N.W.2d 17, 21 (Minn.1992).

Ganley argues that the referee refused to rely on probative and relevant evidence of the free certified copy of the judgment and decree as evidence that Gertjejanssen knew her petition for IFP had been granted. He contends that such evidence is also proof that, because she received the free certified copy of the judgment and decree and not the $120 filing fee, she knew or should have known that Ganley was keeping the fee. Ganley also contends the "costs" are probative of the fact he did not misrepresent that he was keeping the $120 filing fee because Gertjejanssen never was billed for the certified copy of the judgment and decree and she knew she had petitioned the court for waiver of the court costs—namely the certified copy and the filing fee.

At the very least, Ganley had a responsibility to explain to his client *exactly* what would happen to the $120 filing fee if she received IFP status. He never made any attempt to reduce the "altered fee structure" to writing. Simply assuming she would know is not enough.

This court has imposed a 90–day suspension, fine and ordering of re-taking the Professional Responsibility portion of the Multistate Exam on an attorney for failing to communicate with his client and intentionally misrepresenting to the client the status of his client's case. *In re McGrath*, 462 N.W.2d 599, 601 (Minn.1990).

Ganley has admitted that he did not deposit client funds into a trust account. He argued in his brief that his actions were unintentional. However, at oral argument, with respect to initial payments made by Gertjejanssen, he claimed he had made no trust account violations at all. This violation concerns the court most of all, for Ganley insinuates that he has not, and need not change his methods of dealing with trust accounts.

■ This court held in *In re Shaw*, 298 N.W.2d 133 (Minn.1980), that "[e]very lawyer is * * * charged with the knowledge that he must maintain a separate account and adequate records." *Id.* at 135. Mr. Ganley is no exception. The fact that he claims he had no

intention to defraud does not mitigate the requirement that money be held in the trust account until it is earned or required for payout. This court has imposed a four-month suspension on an attorney who misappropriated a client's funds, even though the court determined that the client was not injured and there was no intent to defraud. *In re Gubbins,* 380 N.W.2d 810, 812 (Minn.1986).

We recognize that Ganley performed a large amount of work for the $350 he received. However, we have little sympathy for an attorney who does not maintain adequate records and documents of his time and effort. Ganley may not have found himself before this court had he kept better track of his time and documented his contacts with this client.

In *In re Boyd,* 430 N.W.2d 663 (Minn. 1988), Boyd prepared a false deed, forged his client's signature and notarized it, then filed it with the court. He later issued a false title opinion based on that same deed. We imposed a six-month suspension in that case. *Id.* at 667. We find Ganley's misconduct similar to Boyd's.

We find that the appropriate sanction for Ganley's conduct is a six-month suspension. Accordingly we order:

1. That respondent, John G. Ganley is hereby suspended from the practice of law, commencing 14 days from the date of this order; and he shall not be eligible for reinstatement for six (6) months;

2. That Ganley must comply with the requirements of Rule 26, Rules on Lawyers Professional Responsibility;

3. That Ganley repay costs in the amount of $750, pursuant to Rule 24(d), Rules on Lawyers Professional Responsibility.

4. Reinstatement shall be conditioned on the following:

(a) Ganley's successful completion of a trust account CLE or other similar session regarding the maintenance and handling of trust accounts and client funds;

(b) Ganley's successful completion of the professional responsibility portion of the Multistate Bar Examination, pursuant to Rule 18(e)(2), Rules on Lawyers Professional Responsibility.