**In re Petition for DISCIPLINARY ACTION AGAINST Dyan Lynn CAMPBELL, an Attorney at Law of the State of Minnesota.**

No. C0–99–688.

Supreme Court of Minnesota.

Dec. 23, 1999.

Edward J. Cleary, Director, Kenneth L. Jorgensen, First Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, for appellant.

Dyan Lynn Campbell, North St. Paul, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Dyan Lynn Campbell on March 24, 1999, alleging that she had violated various ethical rules. On August 4, 1998, the Director filed a supplementary petition alleging additional rule violations. Because Campbell failed to respond to either petition, the

Director moved this court for summary relief. We granted the Director's motion for summary relief and the allegations in the petitions were deemed admitted pursuant to Rule 13(b), Rules on Lawyers Professional Responsibility (RLPR), and oral arguments were scheduled before this court. Campbell did not submit a written response or appear for oral argument. As a result of Campbell's professional misconduct and for the protection of the public, we order an indefinite suspension from the practice of law for a minimum of two years.

## I. Rule Violations

■ Dyan Lynn Campbell was admitted to the practice of law in Minnesota on October 23, 1992. In August 1996, Campbell was issued an admonition for neglecting a client's divorce matter, failing to adequately communicate with a client, and failing to promptly pay attorney fees that had been awarded. In October 1998, the Director's Office received notice of an overdraft on Campbell's client trust account. Following this notification, the Director's Office began to receive complaints about Campbell from her clients. The Director's first count of misconduct against Campbell involves Campbell's conduct with seven client matters. The second count of misconduct concerns Campbell's failure to cooperate with the Director's Office and her failure to explain the trust account overdraft. In a supplementary petition for disciplinary action, the Director added two additional counts against Campbell. The third count of misconduct relates to Campbell mishandling her client trust account. The final count of misconduct charges Campbell with additional noncooperation with the Director's Office.

## A. First Count—Client Matters

### 1. Scott Moon

Scott Moon retained Campbell in September 1997 to represent him in a child custody matter. While Campbell satisfactorily represented Moon until November 1998, after that point Campbell stopped returning Moon's telephone calls. As a result, Moon visited Campbell's office and discovered that she had moved. After Campbell's former receptionist gave Moon Campbell's home address and telephone number, Moon left numerous telephone messages on the answering machine at Campbell's home. Campbell never returned Moon's telephone calls or responded to a letter that Moon wrote asking her to contact him. Because Moon was unable to contact Campbell, he appeared and represented himself at a January 1999 hearing without the assistance of his case file, as it was still in Campbell's possession. Campbell has made no subsequent efforts to communicate with Moon.

### 2. Gary Evenson

Gary Evenson retained Campbell in January 1998 to represent him in a child custody matter. When an initial custody motion was denied 6 months later, Evenson immediately directed Campbell to file an appeal. In the ensuing weeks, Campbell periodically told Evenson that she was negotiating with opposing counsel for a visitation schedule that would render an appeal unnecessary. Subsequently, Campbell stopped returning Evenson's telephone calls.

In September 1998, on the filing deadline for Evenson's appeal, Campbell called Evenson and falsely stated that she was still negotiating with opposing counsel. Relying on this statement, Evenson directed Campbell to continue negotiations and not to file an appeal. Despite Campbell's assurances that she would keep Evenson informed about the negotiation results, Campbell had no further contact with Evenson despite his leaving her approximately 40 telephone messages.

In November 1998, Evenson visited Campbell's office and discovered that she had moved without notifying him or providing any forwarding information. In early December 1998, Evenson wrote

Campbell requesting that she return his case file and refund his unearned retainer balance. Campbell has not responded to Evenson's letter, returned his case file, or issued a refund.

### 3. Lisa Pendleton

Lisa Pendleton retained Campbell in March 1998 to represent her in a marriage dissolution. Beginning in September 1998, Campbell failed to respond to Pendleton's numerous telephone messages and failed to inform Pendleton when she moved from her office. Then, on approximately November 12, 1998, Campbell telephoned Pendleton and informed her of an upcoming November 4 hearing on her husband's motion to reduce child support. At the hearing, the parties reached an agreement and Campbell read a stipulation on the record. Following the hearing, Pendleton left approximately ten telephone messages for Campbell inquiring about the matter's status and whether a judgment had been entered. Campbell did not respond to any of these messages and there has been no subsequent contact between Campbell and Pendleton.

### 4. Brad and Karla Olson

Brad and Karla Olson retained Campbell in May 1998 to handle a child support matter. Campbell was one hour late for the first hearing she attended as the Olsons' attorney and was 45 minutes late for the next hearing. At the latter hearing, Campbell stated that she would submit a proposed order for child visitation to the judge, but failed to do so. At that same hearing, a child support issue was continued pending Brad Olson's former wife's submission of proof of her income and daycare costs. Although Campbell later received this information, she never provided it to the Olsons despite their specific requests that she do so. In late September 1998, Campbell told Karla Olson that she would write to the daycare provider to request the information, but failed to do so.

Beginning in early October 1998, the Olsons began finding it difficult to contact Campbell because she would not return their telephone calls. Karla Olson subsequently discovered that Campbell had moved from her office without notifying the Olsons or providing them with any forwarding information. In early November 1998, after a motion to claim the child for income tax purposes was dismissed as untimely, the Olsons left messages at Campbell's home but did not receive a response. The Olsons' last billing statement from Campbell reflected a credit balance, but, despite numerous requests, Campbell has not refunded this unearned retainer balance or returned the Olsons' case file, and the Olsons have been unable to communicate with Campbell since mid-November.

### 5. Ann Hagen

Ann Hagen retained Campbell in June 1998 to represent her in a marriage dissolution. Campbell prepared a summons and petition for dissolution of marriage, which Hagen then reviewed and signed. Campbell served those documents on Hagen's husband within a month after being retained. However, after mid-July 1998, Hagen was unable to contact Campbell and subsequently learned that Campbell had moved from her office without notifying Hagen or providing any forwarding information. Campbell never filed Hagen's divorce matter with the court or refunded Hagen's unearned retainer balance. Campbell has made no subsequent efforts to communicate with Hagen.

### 6. Ralph Neinas

Ralph Neinas retained Campbell in June 1998 to represent him in a marriage dissolution. At their initial meeting, Campbell stated that she would mail Neinas a copy of a retainer agreement, but failed to do so.

Before September 4, 1998, Neinas' wife served Campbell with a summons and peti-

tion for dissolution of marriage. Campbell then mailed the summons to Neinas with instructions that he sign the admission of service before a notary public and return it to her. After Neinas did as he had been instructed, Campbell told Neinas that she had forwarded the executed admission of service to opposing counsel even though she had not done so. Thereafter, Neinas was unable to contact Campbell despite leaving numerous telephone messages. On October 20, 1998, while attempting to deliver documents to Campbell, Neinas learned that Campbell had moved from her office without notifying him of the move or providing any forwarding information.

In November 1998, Neinas wrote Campbell a letter terminating representation and requesting that she refund his retainer. Receiving no response, in January Neinas wrote Campbell requesting that she return his case file. Campbell did not respond to either request.

### 7. Dennis Oie

Dennis Oie retained Campbell in approximately July 1998 to represent him in a marriage dissolution. Campbell did not commence the proceeding and in September 1998, Oie's wife served him with a summons and petition for dissolution of marriage. The next month Campbell advised Oie that she had received a settlement demand from opposing counsel. Although Campbell stated that she would forward a copy of the demand for Oie's consideration, she failed to do so. Soon thereafter, Oie learned that Campbell had moved from her office without notifying him or providing any forwarding information. Campbell has made no subsequent efforts to communicate with Oie.

The Director alleges that Campbell's conduct in these seven client matters violated Minnesota Rules of Professional Conduct (MRPC) 1.3 (requiring an attorney to act with reasonable diligence and promptness in representing a client); Rule 1.4, MRPC (requiring an attorney to keep a client reasonably informed about the status of his case, comply with reasonable requests for information, and explain the matter to the extent necessary for the client to be able to make informed decisions); Rule 1.15(b)(4), MRPC (requiring an attorney to promptly return funds to which the client is entitled upon client request); Rule 1.16(d), MRPC (requiring an attorney to surrender papers and property to which the client is entitled and to refund any advance payment of fee that has not been earned at termination of the representation); Rule 3.2, MRPC (requiring an attorney to expedite litigation consistent with her client's interests); Rule 4.1, MRPC (prohibiting an attorney from knowingly making false factual or legal statements in the course of representing a client); Rule 8.4(c), MRPC (forbidding an attorney from engaging in conduct that is dishonest, fraudulent, deceitful, or that constitutes misrepresentation); and Rule 8.4(d), MRPC (prohibiting an attorney from engaging in conduct prejudicial to the administration of justice).

### B. Second Count—Noncooperation

Campbell is also charged with noncooperation with the Director's Office and failure to explain a trust account overdraft. After receiving notice of Campbell's trust account overdraft in October 1998, the Director's Office on three occasions wrote Campbell requesting various trust account documents and an explanation for the overdraft. Campbell did not respond to these requests. Subsequently, Campbell failed to respond to any of the numerous notices of investigation and requests by the Director's Office for information regarding the aforementioned numerous client complaints. In February 1999, the Director wrote Campbell encouraging her to return her client case files and offering his office's assistance. Campbell did not respond to the letter.

The Director alleges that Campbell's noncooperation violated Rule 8.1(a)(3), MRPC (forbidding an attorney from know-

ingly failing to respond to a disciplinary authority's demand for information), Rule 25, RLPR (requiring an attorney subject to investigation under the Rules to cooperate with the Director's Office by complying with reasonable requests for information and appearances), and this court's directive in *In re Cartwright,* 282 N.W.2d 548, 551 (Minn.1979) ("We have long recognized that it is incumbent upon an attorney to cooperate with disciplinary authorities in their investigation and resolution of complaints").

## C. Third Count—Mishandling of Trust Account

In addition to the misconduct involved in the first two counts, Campbell has mishandled client funds. In March 1999, the Director subpoenaed copies of some of Campbell's trust account bank records. While those records were not adequate to perform a complete audit, they were sufficient to demonstrate that on at least two occasions Campbell's account balance was less than the amount the account should have contained.

The Director alleges that Campbell's failure to properly maintain her client trust account violated Rule 1.15(a), MRPC (requiring an attorney to deposit all client funds in an identifiable interest bearing trust account), Rule 8.4(c), MRPC, and Rule 8.4(d), MRPC.

## D. Fourth Count—Additional Noncooperation

The Director's supplementary petition for disciplinary action details Campbell's additional noncooperation with the Director's Office. Throughout the months of February and March 1999, the Director's Office received three additional client complaints against Campbell. For each of these complaints, the Director's Office sent Campbell a notice of investigation requesting her response to the complaint. Campbell failed to respond in each case.

The Director alleges that Campbell's additional noncooperation violated Rule 8.1(a)(3), MRPC, Rule 25, RLPR, and this court's directive in *Cartwright,* 282 N.W.2d at 551.

## II. Discipline

The Director asserts that Campbell's various acts of professional misconduct demonstrate "an alarming lack of concern for both her clients and the disciplinary system." Accordingly, the Director recommends that Campbell be indefinitely suspended. Because the allegations of the Director's petition are deemed admitted, this court need only address what discipline is appropriate. *See* Rule 13(b), RLPR.

■■■ The purpose of disciplinary proceedings is not to punish the attorney but to protect the courts, the public, and the profession and to guard the administration of justice. *See In re Madsen,* 426 N.W.2d 434, 435 (Minn.1988). When deciding what discipline is appropriate, we consider the nature of the misconduct, the cumulative weight of the violations, the harm to the public, and the harm to the profession. *See id.* at 436. Although each case is considered independently, prior cases are helpful by analogy. *See In re Wareham,* 413 N.W.2d 820, 821 (Minn.1987).

■■■ This case involves various types of misconduct, the most serious of which are Campbell's neglect of client files, failure to return client property and unearned retainer fees, and noncooperation with the disciplinary process. In prior discipline cases, we have generally held that an attorney's pattern of neglect and failure to communicate with clients, combined with failure to cooperate with a disciplinary authority's investigation, usually warrants an indefinite suspension from the practice of law. *See, e.g., In re McCabe,* 591 N.W.2d 723, 725 (Minn.1999) (abandonment of law practice without notifying clients, failure to return client files, and failure to cooperate with disciplinary proceedings warranted indefinite suspension); *In re Pucel,* 588 N.W.2d 741, 743 (Minn.1999) (failure to

communicate with one client, failure to properly maintain client funds, and failure to cooperate with disciplinary proceedings warranted indefinite suspension); *In re Bishop,* 582 N.W.2d 261, 263–64 (Minn. 1998) (neglect of four clients' legal matters, failure to communicate with those four clients, and failure to cooperate with disciplinary proceedings warranted indefinite suspension); *In re Engel,* 538 N.W.2d 906, 907 (Minn.1995) (failure to cooperate with disciplinary investigation regarding client complaints of neglect warranted indefinite suspension).

 When we have deemed the attorney's professional misconduct to be more serious, we have not only indefinitely suspended the attorney, but we have done so for a minimum period of time. *See, e.g., In re Lindley,* 538 N.W.2d 697, 698 (Minn. 1995) (neglect of client matters, misrepresentation, trust account violations, misappropriation of client funds, and failure to cooperate with disciplinary proceedings warranted indefinite suspension for a minimum of two years); *In re Kinnunen,* 502 N.W.2d 773, 775 (Minn.1993) (neglect of client matters, failure to properly maintain trust account, and failure to cooperate with disciplinary proceedings warranted indefinite suspension for a minimum of 18 months); *In re Jensen,* 418 N.W.2d 721, 723 (Minn.1988) (neglect of two client matters and failure to cooperate with disciplinary proceedings warranted indefinite suspension for minimum of one year). Furthermore, we have stressed that failure to cooperate with a disciplinary investigation, in and of itself, constitutes an ethical offense that warrants indefinite suspension. *See Engel,* 538 N.W.2d at 907.

Here, Campbell's misconduct involved the neglect of numerous clients and client matters and she has presented no mitigating circumstances to this court. As in the cases cited above, Campbell exhibited a pattern of neglect and failure to diligently communicate with her clients. Campbell has also failed to return her clients' case files and has not cooperated with the disciplinary investigation regarding client complaints. For these reasons, we order that Dyan Lynn Campbell:

1. Be indefinitely suspended from the practice of law pursuant to Rule 15(a)(2), RLPR with no right to apply for reinstatement for a period of two years; and

2. Comply fully with the requirements of Rule 18, RLPR, should she apply for reinstatement; and

3. Pay to the Director a sum of $900 for costs and disbursements pursuant to Rule 24, RLPR.

Indefinite suspension ordered.