In re PETITION FOR DISCIPLINARY ACTION AGAINST Gary K. WOOD, a Minnesota Attorney, Registration No. 118722.

No. A05–389.

Supreme Court of Minnesota.

June 29, 2006.

Betty M. Shaw, Acting Director, Office of Lawyers Professional Responsibility Board, Martin A. Cole, First Assistant Director, St. Paul, MN, for Appellant.

Gary K. Wood, Edina, MN, for Respondent.

## OPINION

### PER CURIAM.

On February 24, 2005, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent, Gary K. Wood, alleging professional misconduct that warrants public discipline. On May 10, 2005, this court appointed a referee to hear Wood's disciplinary action. On October 4, 2005, after a hearing on the petition, the referee concluded that Wood violated Rules 1.3, 1.4, 1.8(a), 3.2, 8.1(a)(3) of the Minnesota Rules of Professional Conduct (MRPC) and Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR). The referee recommended that Wood be indefinitely suspended from the practice of law and not be eligible to apply for reinstatement for at least six months. For the reasons discussed below, we conclude that Wood's misconduct warrants the recommended discipline.

Wood was admitted to practice law in Minnesota on October 21, 1977, and currently practices law in Minneapolis. Prior to the disciplinary action at issue, Wood received six separate discipline sanctions from the Office of Lawyers Professional Responsibility. Specifically, (1) on October 23, 1987, Wood received an admonition for failing to pursue a workers' compensa-tion matter and to respond to a client's telephone calls in violation of Rules 1.3 and 1.4, MRPC; (2) on September 13, 1996, Wood received an admonition for failing to diligently represent a client and not communicating with the client in violation of Rules 1.3 and 1.4, MRPC; (3) on March 28, 2000, Wood received private probation for endorsing settlement checks without the authorization of his law firm, failing to maintain required trust account books and records, failing to provide an accounting for money withheld from a settlement, failing to diligently pursue a client matter, practicing law while on restricted status, failing to pay a court reporter, and failing to cooperate in a disciplinary investigation in violation of Rules 1.3, 1.4, 1.15, 1.15(b)(3), 5.5, 8.1(a)(3), and 8.4(c) and (d), MRPC, and Rule 25, RLPR; (4) in 2001, Wood's private probation was extended for failing to pay another court reporter in violation of Rule 8.4(d), MRPC; (5) on March 25, 2003, Wood received an admonition for failing to diligently and promptly represent a client in violation of Rule 1.3, MRPC; and (6) on February 26, 2004, Wood received an admonition for failing to diligently represent a client and failing to communicate with his client in violation of Rules 1.3 and 1.4(a), MRPC.

On February 24, 2005, the Director filed the current petition for disciplinary action alleging three counts of professional misconduct. First, the Director alleged that on July 16, 1999, Wood borrowed $20,644.96 from Client A. Wood told the client that he needed the loan to avoid a foreclosure on his home. In return, Wood drafted and signed a hand-written 30–day promissory note, which specified that the note is "payable on demand by [Client A] within 30 days if [Wood] fails to diligently seek refinancing through an approved lender." Wood did not advise Client A to seek independent counsel about the loan, and

Client A did not give Wood a written consent to proceed with the loan without the advice of independent counsel. On April 2, 2004, Client A filed a complaint against Wood with the Director's office, stating Wood failed to pay back any part of the loan. On April 27, 2004, in response to Client A's complaint, Wood sent to Client A and the Director an invoice demonstrating that Wood had offset the loan payments against fees owed by Client A and several businesses in which Client A had an interest. Client A, however, was not aware of the offset and disputed the amount of the legal fees that were owed to Wood. The Director concluded that Wood's behavior in the Client A matter violated Rule 1.8(a), MRPC.

Second, the Director alleged that Wood failed to diligently represent Client B and Client B's father, Client C. The Director alleged that, in the latter half of 2001, Client B retained Wood to represent him on a matter involving an escrow account held by a title company. Wood failed to take any action on Client B's matter and failed to respond to the client's telephone calls. Wood represented Client C in an insurance claim arising from a fire that took place at one of Client C's properties. Wood failed to inform Client C of an April 2, 2002, hearing and attended the hearing without his client. Wood subsequently admitted that he did not timely comply with the opposing counsel's motion to compel discovery. The Director concluded that Wood's behavior in the Client B and Client C matters violated Rules 1.3, 1.4, and 3.2, MRPC.

Third, the Director alleged that Wood failed to cooperate with a disciplinary investigation. Specifically, on June 6, 2003, the Director received a complaint against Wood from one of Wood's clients, Client D. The complaint stated that Wood failed to deliver to Client D a $25,000 check from the sale of one of Client D's properties. On June 9, 2003, the Director sent Wood a notice of investigation and requested that Wood meet with the Director on June 24, 2003, and submit a written response before the meeting. On June 24, 2003, Wood met with the Director, but failed to provide a response to Client D's complaint. Wood then failed to respond to the Director's July 11, 2003, July 31, 2003, and August 21, 2003, written requests for further information. On September 26, 2003, the Director requested that Wood provide an immediate response to Client D's complaint. On October 5, 2003, Wood faxed to the Director a response to the complaint, but did not submit other required information until October 30, 2003. The Director concluded that Wood's noncooperation with the investigation violated Rule 8.1(a)(3), MRPC, and Rule 25, RLPR.

Wood did not answer the Director's petition, and on March 29, 2005, the Director filed a motion with this court for summary relief under Rule 13(b), RLPR. On April 1, 2005, we ordered that the allegations in the petition be deemed admitted and gave both parties the opportunity to submit briefs by April 25, 2005. On April 5, 2005, Wood requested permission from this court to respond to the Director's motion for summary relief, to oppose the motion, and to file an answer to the petition. The Director did not oppose the request, and on April 26, 2005, we granted Wood's motion and later appointed District Court Judge Bruce W. Christopherson as the referee to hear Wood's disciplinary action.

On September 23, 2005, the referee held a hearing. Client A testified against Wood at the hearing, and his testimony was consistent with the allegations the Director made in the petition for discipline. Client A also testified that, while attempting to obtain a judgment on Wood's home, he discovered that Wood no longer held the

title to the home. Client A then stated that Wood sent him a letter at the beginning of 2005 in which Wood proposed a $200 per month repayment plan, but Client A never received any payments from Wood. Client A testified that he was not aware that Wood was offsetting the loan payments against legal fees and he never authorized such an offset.

Wood testified on his own behalf at the hearing. Wood admitted that he borrowed $20,644.96 from Client A, was not able to secure refinancing on his home, and subsequently, did not make any payment to Client A prior to the hearing. Wood also acknowledged that he did not advise Client A to retain independent counsel with respect to the loan. But Wood insisted that the legal fees he charged Client A accurately reflected the amount of the legal work he had done for Client A. Wood acknowledged that, subsequent to obtaining the loan from Client A, he transferred the title of his home to his daughter, but explained that he had done so to obtain a lower-interest loan on the home. Wood then admitted to the Director's allegations against him in the matter involving Clients B and C and his failure to cooperate with the Director.

On October 4, 2005, the referee filed his Findings of Fact, Conclusions of Law and Recommendation with this court. As to the Client A matter, the referee found that Wood obtained a loan from Client A in 1999 to avoid a foreclosure on his home. Specifically, Wood received $20,644.96 from Client A on a 30–day promissory note that was prepared by Wood. Wood, however, did not inform Client A that he was involved in a Chapter 13 bankruptcy proceeding. Wood also did not advise Client A to seek independent counsel. Wood failed to obtain refinancing until September 2002 and never repaid any of Client A's loan despite Client A's repeated demands for repayment. Later, Wood transferred the title to his home to his daughter.

The referee found that, in his response to Client A's complaint, Wood indicated for the first time that he had offset the loan payments against fees owed by Client A and by businesses in which Client A held an interest. The referee also found that Client A never agreed to such an arrangement. The referee then found that Wood's misconduct was aggravated by raising this offset claim "tardily and without warning."

As to the Client B and Client C matters, the referee found that Wood was retained to represent Client B regarding an escrow account held by a title company in 2001, but failed to take any action and did not respond to Client B's telephone calls. The referee also found that Wood negligently represented Client C in an insurance claim by failing to timely comply with and notify Client C of a motion to compel.

As to the failure-to-cooperate matter, the referee found that Wood failed to cooperate with the Director's investigation regarding the complaint of Client D, who made serious allegations against Wood. Wood was first asked to respond to this complaint on June 9, 2003, but did not submit a written response until October 5, 2003. Thereafter, on two other occasions, the Director requested that Wood provide documents to verify parts of this response. Wood, however, did not comply with the Director's request until October 30, 2003.

The referee found that Wood's misconduct was aggravated by his disciplinary history, and that there was no "proven mitigation." The referee then recommended that Wood be indefinitely suspended from the practice of law and not be eligible to apply for reinstatement for at least six months. After the hearing, Wood ordered a hearing transcript; therefore, the referee's findings of fact and conclu-

sions of law are not binding on our court. Rule 14(e), RLPR (stating a referee's findings and conclusions are inconclusive and subject to challenge if either party timely orders a transcript and so notifies our court).

In his appeal to our court, Wood argues that the referee erred by refusing to allow Wood to testify at the disciplinary hearing about a previous offer from the Director to resolve this matter and in not finding any mitigating circumstances. We first address Wood's argument that the referee should have allowed him to testify to the settlement offer from the Director. According to Wood, in November 2004, the Director recommended that Wood receive a public reprimand. Wood further stated that as part of this settlement offer, the Director also required Wood to (1) inform his law firm of the disciplinary charges, (2) reach an agreement with Client A as to a loan payment amount, (3) make arrangements to satisfy the loan, and (4) retain employment with his law firm. In February 2005, Wood's law firm terminated Wood's employment, and Wood was not able to meet the Director's requirements. Subsequently, the Director withdrew the settlement offer. When Wood attempted to testify regarding the Director's offer at the hearing, the referee ruled that such discussions were inadmissible as settlement negotiations or compromise under Rule 408 of the Minnesota Rules of Evidence.

■ Wood contends that the referee erred in relying on Rule 408 of the Minnesota Rules of Evidence because the disciplinary hearing is an administrative proceeding and, as such, the Minnesota Rules of Evidence should not apply. Wood also argues that "the content of the offer is relevant to the Director's recognition of the steps [Wood has] taken to remedy [Wood's] practice deficiencies and ought to be considered in light of the absence of any further objectionable conduct." Further, an "increased discipline for a failure to meet a condition over which [Wood] had no control is neither fair nor reasonable."

Contrary to Wood's assertion, Rule 9(i)(4), RLPR, specifically provides that in a lawyer discipline proceeding, "[t]he parties shall introduce their evidence in conformity with the [Minnesota] Rules of Evidence except that affidavits and depositions are admissible in lieu of testimony." As such, Wood's argument that a lawyer discipline action should not be subject to the Rules of Evidence is without merit.

■ Wood further claims that, even if Rule 408 of the Minnesota Rules of Evidence applied to the proceeding, the referee still erred in not allowing him to introduce the Director's previous settlement offer. "Rulings on evidentiary matters are left to the discretion of the district court and will not be reversed absent an abuse of discretion." *In re Westby*, 639 N.W.2d 358, 366 (Minn.2002) (citing *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983)). In the instant case, the fact that the Director offered Wood a less severe discipline at an earlier date has no relevance to what the appropriate discipline against Wood should be in light of his misconduct nor is it, as Wood argues, an indication of "the Director's recognition of the steps [Wood has] taken to remedy [Wood's] practice deficiencies." Rather, the Director's previous offer was conditioned upon Wood's willingness and ability to repay the funds he owed Client A. The change in Wood's employment status indicates that these requirements were no longer applicable and, accordingly, the Director sought a new set of disciplinary sanctions against Wood based on the changed circumstances and on Wood's continued failure to repay

Client A. For these reasons, we conclude that the referee did not abuse his discretion when he prohibited Wood from testifying to the specifics of the Director's offer.

■ Wood next argues that the referee erred in not finding any mitigating circumstances. According to Wood, the recommended discipline is excessive in light of "all the steps [he has] taken to change [his] approach and attitude about [his] practice and expectation of professionalism" and his "efforts to rehabilitate and recompense."

■ We give "great deference to a referee's findings on disputed facts and will not reverse the referee's findings and conclusions unless they are clearly erroneous." *Westby*, 639 N.W.2d at 367. Here, the referee's finding that there are no mitigating factors is fully supported by the record. Specifically, despite Wood's assertion that he has taken steps to remedy his past mistakes, he continues to ignore his professional obligations and has been the subject of numerous disciplinary actions by the Director's office over the years. The fact that the offenses at issue here occurred in the context of a lengthy disciplinary history shows that Wood has not changed his "approach and attitude about [his] practice and expectation of professionalism." Moreover, despite Wood's assertion at the disciplinary hearing that he "now [does not] have any of the deficiencies in terms of record keeping, of billing, of client agreements, that [he] had previously," Wood presented no evidence to support the assertion. We are especially troubled by the fact that (1) between 1999 and 2006, Wood did not repay any of the loan that he owed Client A, and (2) during oral argument before our court, Wood attempted to equate his outstanding loan obligation to an "attorneys fee dispute." The record does not show that Wood has

taken adequate steps to recognize and correct his mistakes, and we conclude that the referee correctly found that "[Wood] presented no proven mitigation."

■ Having determined that the referee did not commit the errors that Wood alleges on appeal, we now turn to the question of whether the disciplinary action recommended by the referee is warranted. When considering a petition for lawyer discipline, our court has the ultimate responsibility for determining the appropriate sanction. *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.2004). Specifically, we consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the violations of the rules of professional conduct; (3) the harm to the public; and (4) the harm to the legal profession. Id. (citing *In re Singer*, 541 N.W.2d 313, 316 (Minn.1996)). Appropriate sanctions are determined on a case-by-case basis after considering both aggravating and mitigating circumstances. *In re Wentzell*, 656 N.W.2d 402, 408 (Minn.2003). We also look to similar cases for guidance in setting the proper discipline. *In re Thedens*, 557 N.W.2d 344, 347 (Minn.1997).

In the instant case, the referee reviewed the public reprimand and probation that we issued in *In re Eisbach*, 577 N.W.2d 479 (Minn.1997), and in *In re Hendrickson*, 464 N.W.2d 722 (Minn.1991). The referee noted that, although those cases did not result in suspension, Wood's misconduct matter is significantly more aggravated. Specifically, Wood claims that he credited loan payments against Client A's legal fees, but he did not mention the offset to Client A until after Client A had filed a complaint against him. Client A, therefore, was never informed of the offset and disputes the offset that Wood claims. Moreover, Wood failed to take reasonable steps to repay the loan, and this misconduct occurred after a lengthy history of

disciplinary problems. We agree with the referee's determination that Wood's conduct in the Client A matter warrants more serious discipline than what we imposed in *In re Eisbach*, 577 N.W.2d 479, and in *In re Hendrickson*, 464 N.W.2d 722.

In addition, Wood's failure to diligently represent Clients B and C indicates a pattern of continuing neglect. Wood has been given numerous opportunities to alter this pattern of conduct, but has failed to do so. Although isolated and nonserious instances of neglect and noncommunication frequently result in the issuance of an admonition by the Director, this court has publicly disciplined lawyers for a pattern of neglect. *See, e.g., In re Mitchell*, 368 N.W.2d 273, 273 (Minn.1985); *In re Geiger*, 621 N.W.2d 16, 23 (Minn.2001). Here, we conclude that Wood's neglect and noncommunication in the Client B and Client C matters warrant public discipline.

Finally, Wood failed to cooperate with the Director in a disciplinary action investigation. In *In re Ek*, we pointed out that:

> [W]e have repeatedly recognized that attorney cooperation is imperative, and have made it clear that a failure to cooperate in a disciplinary investigation constitutes independent grounds for discipline.

643 N.W.2d 611, 614 (Minn.2002). In addition, a lawyer's noncooperation, when combined with a pattern of neglect and noncommunication, has often resulted in the attorney's indefinite suspension. *See, e.g., In re Engel*, 538 N.W.2d 906, 907 (Minn. 1995); *In re Campbell*, 603 N.W.2d 128, 132 (Minn.1999). In the instant case, not only was Wood previously admonished for his neglect and noncommunication, he was also previously disciplined for his failure to cooperate with another investigation. For these reasons, we conclude that Wood's failure to cooperate with the disciplinary investigation warrants a public discipline.

For the above reasons, we conclude that the record fully supports the referee's factual findings, legal conclusions, and recommendation for discipline. We therefore hold that Wood's misconduct warrants the discipline recommended by the referee and now order:

1. That respondent, Gary K. Wood, be indefinitely suspended from the practice of law, commencing two weeks from the date of this decision.

2. That respondent shall not be eligible to apply for reinstatement for at least six months after suspension.

3. That respondent comply with the requirements of Rule 18(a)-(e), RLPR.

4. That respondent comply with the requirements of Rule 26, RLPR.

5. That respondent pay to the Director the sum of $900 in costs and an amount for disbursements to be determined in compliance with Rule 24, RLPR.

6. That as a condition for reinstatement, respondent shall present a plan for repayment of the loan to Client A, including a method to determine the amount due and owing. After any reinstatement, continued payments to Client A should be required and monitored.

7. That following reinstatement, respondent be supervised by another attorney for a period of one year.

So ordered.