In re Petition for DISCIPLINARY AC-
TION AGAINST Nuro Bedhaso DE-
DEFO, a Minnesota Attorney, Regis-
tration No. 309989.

No. A07–573.

Supreme Court of Minnesota.

July 17, 2008.

Martin A. Cole, Director Office of Lawyers Professional Responsibility, Cassie Hanson, Senior Assistant Director, St. Paul, MN, for Appellant.

William E. Sjoholm, Debra M. Newel, Thomsen & Nybeck, P.A., Edina, MN, for Respondent.

## OPINION

PER CURIAM.

In March 2007, the Director of the Office of Lawyers Professional Responsibility ·(the Director) filed a petition for disciplinary action against respondent Nuro Bedhaso Dedefo. We appointed a referee to conduct a hearing and make findings of fact and recommendations for discipline, if necessary. After the hearing, the referee found that Dedefo violated various rules of professional conduct by: (1) improperly maintaining client trust accounts, books, and records; (2) incompetently representing himself; (3) obstructing another party's access to relevant evidence; (4) knowingly offering false evidence; and (5) engaging in conduct prejudicial to the administration of justice. Based on those findings, the referee recommended Dedefo be suspended from the practice of law in the State of Minnesota and be ineligible to petition for reinstatement for a minimum of 6 months. Dedefo now challenges the referee's evidentiary rulings, findings of fact and conclusions of law, and disciplinary recommendation. We conclude that the appropriate discipline for Dedefo's misconduct is the indefinite suspension of Dedefo's license to practice law with no right to petition for reinstatement for a minimum of 6 months.

In 1995, Dedefo moved to the United States from Ethiopia. B.G., Dedefo's wife, joined him in the United States in 1999. Dedefo graduated from Hamline University Law School and was admitted to practice law in Minnesota in October 2001. Since early 2002, he has maintained a general practice focusing on personal injury law.

In February 2001, B.G. sought an order for protection (OFP) against Dedefo, claiming that he had hit her in the eye, choked her, and pulled out clumps of her hair. At a hearing on the OFP petition, B.G. testified that Dedefo abused her and produced photographs of her injuries. Dedefo denied that any abuse occurred. The district court issued the OFP, finding B.G.'s testimony more credible than Dedefo's.

Dedefo blamed three former friends for encouraging B.G. to seek the OFP. As a result, Dedefo commenced legal action (the lawsuit) against the three, alleging defamation, misrepresentation, intentional inflic-

tion of emotional distress, and interference with marital relationship. The defendants deposed Dedefo. During the deposition, Dedefo refused to disclose the factual basis for the allegations in his complaint on the ground that the information was protected by the work product doctrine. He also refused to answer questions about his relationship with B.G., saying, "I'm not here to talk about my wife. I'm here to talk about what they did to me." He responded to questions about his claims with such statements as, "Be specific"; "It's already stated in the complaint"; and "I will produce evidence when time is right. So I'm not here to tell you how I got the evidence." At the end of the deposition, Dedefo demanded to be paid for his time.

Defendants moved for summary judgment. In opposition to the motion, Dedefo prepared and submitted, among other things, an affidavit signed by B.G. The affidavit retracted B.G.'s allegations of abuse and stated that the three defendants "influenced me to falsely accuse [Dedefo]." The district court granted the defendants' summary judgment motion but denied defendants' request for sanctions against Dedefo. Defendants incurred some $7,500 in attorney fees; Dedefo does not dispute the referee's finding that those fees "placed substantial financial burden" on the defendants.

In February 2003, the Director received notification of an overdraft on Dedefo's trust account and opened a disciplinary file. During the Director's investigation, B.G. met with an attorney in the Director's office. Dedefo drove her to the meeting and waited for her in the lobby. At the meeting, B.G. retracted her statements that Dedefo had abused her and stated that the three defendants coerced her into seeking the OFP. B.G. later testified that she made these statements because "I feared for my life, and at that time I was also pregnant. * * * I afraid he might hit me, or I don't know what would happen to me."

B.G. secured a second OFP against Dedefo in August 2003 after a contested hearing. Dedefo did not contest the issuance of a third OFP in October 2004, although he continued to deny ever abusing B.G. Dedefo eventually filed for dissolution, which was finalized in 2005.

In 2007, the Director petitioned for disciplinary action based on alleged trust account violations, obstruction of the defendants' access to evidence in the defamation case, and knowing presentation of a false affidavit to the court. We appointed a referee, who conducted a hearing. The parties stipulated to factual findings regarding the trust account violations, but Dedefo challenged the allegations of obstructing access to evidence and filing a false affidavit. B.G., Dedefo, and Dedefo's mother and daughter testified at the hearing.

Following the hearing, the referee found that Dedefo had commingled personal and client funds in his trust account and had negligently misappropriated client funds. The referee concluded that Dedefo had violated Minn. R. Prof. Conduct 1.15(h) by "failing to maintain proper trust account records." The referee further concluded that the Director had proved by clear and convincing evidence that in the defamation lawsuit against his former friends Dedefo: (1) incompetently represented himself in violation of Minn. R. Prof. Conduct 1.1; (2) obstructed the defendants' access to evidence in violation of Minn. R. Prof. Conduct 3.4(a); (3) knowingly offered evidence that he knew to be false in violation of Minn. R. Prof. Conduct 3.3(a)(3); and (4) engaged in conduct prejudicial to the administration of justice in violation of Minn. R. Prof. Conduct 8.4(d). The referee recommended that Dedefo be suspended from the practice of law and ineligible to apply

for reinstatement for a minimum of 6 months.

Dedefo ordered a transcript of the hearing; therefore, the referee's findings are not binding on this court. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). In this proceeding, Dedefo raises three issues. First, he argues that evidence relating to his relationships with B.G. and the three defendants in the lawsuit was not relevant and that the referee erred in admitting it. Second, Dedefo argues that the referee's findings of fact regarding obstruction of access to evidence, the false affidavit, and incompetent representation were clearly erroneous and that therefore the referee's conclusion that Dedefo violated the rules of professional conduct is not supported by clear and convincing evidence. Finally, he argues that the recommended discipline is excessive.

### I.

We turn first to Dedefo's argument that evidence relating to his relationships with the defendants in the lawsuit and his ex-wife was not relevant to any of the issues in the case and, therefore, the referee erred in admitting it. The evidence at issue includes the testimony of B.G. and two of the three defendants in the lawsuit; evidence relating to the OFPs, including the petitions, hearing transcripts, and the OFPs themselves; and the court of appeals opinion adjudicating Dedefo's challenge to the second OFP.

The Minnesota Rules of Evidence apply to disciplinary hearings. Rule 9(i)(4), RLPR; *In re Wood*, 716 N.W.2d 341, 346 (Minn.2006). Only relevant evidence is admissible. Minn. R. Evid. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. A referee may exclude evidence if the danger of unfair prejudice substantially outweighs its probative value. Minn. R. Evid. 403. We will not reverse a referee's evidentiary rulings absent an abuse of discretion. *Wood*, 716 N.W.2d at 346.

We agree with the referee that the evidence regarding Dedefo's abuse of B.G. is relevant to whether Dedefo filed an affidavit that he knew contained false testimony. Specifically, the evidence supports the Director's contention that Dedefo knew the following statements in B.G.'s affidavit were false: that Dedefo never abused her, that the three defendants in the lawsuit coerced her into making false claims of abuse, and that B.G. gave false testimony during the domestic abuse hearing. The evidence tends to show that the abuse occurred, which in turn shows that B.G.'s denials of it were false and that Dedefo must have known the denials were false. The evidence is also relevant as impeachment of Dedefo's testimony before the referee. We believe the significant probative value of the evidence outweighs any potential unfair prejudice. We therefore conclude that the referee did not abuse his discretion by admitting evidence of Dedefo's personal relationships.

### II.

We next examine whether the referee's findings of fact and conclusions of law that Dedefo obstructed the defendants' access to evidence in the lawsuit and knowingly filed a false affidavit were clearly erroneous. "On review, this court will uphold a referee's findings and conclusions unless they are clearly erroneous." *In re Erickson*, 653 N.W.2d 184, 189 (Minn. 2002); *see* Rule 14(e), RLPR. "In other words, findings of fact will be reversed 'only if, upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has

been made.' " *Erickson,* 653 N.W.2d at 189 quoting *In re Pinotti,* 585 N.W.2d 55, 62 (Minn.1998). Further, a referee's findings merit particular deference when they "rest on disputed testimony or on the respondent's credibility or sincerity." *Id.* "Allegations of professional misconduct must be proven by 'full, clear and convincing evidence.' " *Id.* (quoting *In re Ruhland,* 442 N.W.2d 783, 785 (Minn.1989)). "The clear and convincing standard of proof is met 'where the truth of the facts asserted is highly probable.' " *Id.* (quoting *In re Moeller,* 582 N.W.2d 554, 557 (Minn.1998)).

■ We first address the referee's findings and conclusions regarding Dedefo's obstruction of defendants' access to evidence during discovery in the defamation lawsuit.[1] Parties are ordinarily entitled to discovery of all relevant information. *See* Minn. R. Civ. P. 26.02(a). The information defendants sought at Dedefo's deposition, which included the witnesses and documents that would support Dedefo's claim that the defendants induced B.G. to falsely accuse him, went to the very heart of Dedefo's allegations and as such was clearly relevant and therefore discoverable. Thus, Dedefo was obliged to produce it unless he could show an exception applied.

■ The work product doctrine is an exception to the rule that all relevant evidence is subject to discovery. The work product doctrine provides that "an attorney's mental impressions, trial strategy, and legal theories in preparing a case for trial" are not discoverable. *Dennie v. Metro. Med. Ctr.,* 387 N.W.2d 401, 406 (Minn.1986). "[M]aterials prepared in anticipation of litigation that do not contain opinions, conclusions, legal theories, or mental impressions of counsel are not work product and are discoverable under Minn. R. Civ. P. 26.02(3)." *Id.* Here, the defendants sought not information protected by the work product doctrine—that is, Dedefo's mental impressions or trial preparation materials—but rather the factual basis for Dedefo's claims. Dedefo's work product objection prevented the defendants in the lawsuit from obtaining the discovery necessary to investigate Dedefo's claims and to prepare a defense to those claims. We therefore conclude that Dedefo's conduct at the deposition was both incompetent and obstructive and violated Minn. R. Prof. Conduct 1.1, 3.4(a), and 8.4(d). /

■ We next consider whether the referee clearly erred in finding that Dedefo knowingly filed a false affidavit in violation of Minn. R. Prof. Conduct 3.3(a)(3).[2] At the hearing, B.G. testified that the statements in the affidavit were false and were created by Dedefo. The referee concluded that B.G.'s testimony was "credible." The referee noted that the affidavit "is replete with near direct quotes from [Dedefo's] self-drafted complaint in the matter." Finally, the referee found that Dedefo's denials were "not credible in light of B.G.'s testimony, the February 21, 2001, OFP and judicial findings of abuse, and [Dedefo's] continued pattern of physical abuse of [B.G.]." The referee also found that Dedefo coerced B.G. into making false statements to the Director, crediting B.G.'s testimony at the hearing that her statements at the Director's office were "false and made under duress."

**1.** "A lawyer shall not: (a) unlawfully obstruct another party's access to evidence * * *." Minn. R. Prof. Conduct 3.4. "It is professional misconduct for a lawyer to * * * engage in conduct that is prejudicial to the administra-

tion of justice * * *." Minn. R. Prof. Conduct 8.4(d).

**2.** Rule 3.3(a)(3) provides that "[a] lawyer shall not knowingly * * * offer evidence that the lawyer knows to be false."

We conclude that the record amply supports the referee's findings and conclusions. B.G. testified that Dedefo physically abused her and coerced her into signing a false affidavit, and the referee found B.G.'s testimony credible. In addition, the February 21, 2001, OFP supports the referee's findings. The OFP itself is not conclusive, because OFPs issue upon a showing by the preponderance of the evidence, *see, e.g., Johnson ex rel. Johnson v. Johnson*, 726 N.W.2d 516, 518 (Minn.App. 2007), whereas disciplinary proceedings require proof by clear and convincing evidence, *Erickson*, 653 N.W.2d at 189. Nevertheless, we conclude that the totality of the evidence in this case is sufficient to show that Dedefo knowingly filed a false affidavit in violation of Minn. R. Prof. Conduct 3.3(a).

 We conclude that clear and convincing evidence shows that Dedefo negligently misappropriated client funds, commingled client and personal funds, and failed to maintain proper trust account books and records in violation of Minn. R. Prof. Conduct 1.15(a), (b), and (h)[3]; incompetently represented himself in violation of Minn. R. Prof. Conduct 1.1; obstructed another party's access to evidence in violation of Minn. R. Prof. Conduct 3.4(a); knowingly offered evidence that he knew to be false in violation of Minn. R. Prof. Conduct 3.3(a)(3); and engaged in conduct prejudicial to the administration of justice in violation of Minn. R. Prof. Conduct 8.4(d).

### III.

 Finally, we turn to the question of the appropriate discipline in light of Dedefo's violations. Dedefo argues that the referee's recommendation to suspend him from the practice of law for a minimum of 6 months is overly harsh compared to the discipline administered in comparable cases in the past. He asserts as mitigating factors financial hardship, his pro bono services to the Oromo ethnic community, and the fact that no clients were harmed. The Director argues that Dedefo's litigation misconduct was intentional and dishonest and therefore warrants a lengthy suspension. The Director further argues that Dedefo has never expressed remorse for his misconduct.

 "We impose sanctions to protect the public, to guard the administration of justice, and to deter future misconduct." *In re Jensen*, 542 N.W.2d 627, 632 (Minn. 1996). The appropriate sanction depends on four factors: "(1) the nature of the misconduct, (2) the cumulative weight of the violations of the rules of professional conduct, (3) the harm to the public, and (4) the harm to the legal profession." *In re Brooks*, 696 N.W.2d 84, 88 (Minn.2005). "We impose disciplinary sanctions on a case-by-case basis, considering the specific acts of misconduct and any aggravating or mitigating circumstances, while looking to similar cases for guidance." *Id.* Although we give great weight to the referee's recommendation, we alone "retain[ ] final responsibility for determining appropriate sanctions." *Jensen*, 542 N.W.2d at 632.

---

**3.** The Director also challenges the referee's conclusions of law on the limited ground that the referee clearly erred by not concluding that Dedefo violated Minn. R. Prof. Conduct 1.15(a) and (b) as well as 1.15(h), which governs the keeping of trust account books and records. We agree with the Director that the referee's findings of fact support a conclusion that Dedefo improperly disbursed funds from one client's trust funds to cover another client's transactions and, therefore, violated Rule 1.15(a). We also agree that the finding that Dedefo commingled personal and client funds in his trust account supports a conclusion that Dedefo violated Rule 1.15(b). In light of our disposition of the matter, however, these additional violations are of negligible effect.

Lawyer dishonesty is a particularly serious disciplinary violation, and "we should not hesitate to impose severe discipline when a lawyer demonstrates a lack of truthfulness and candor." *In re Ganley,* 549 N.W.2d 368, 370 (Minn.1996) (internal quotation marks omitted). "Suspension is warranted when the lawyer knowingly engages in conduct that violates a duty to the profession and causes injury to the client, the public, or the legal system." *Id.*

Although each case must be determined on its own facts, in this case the referee's recommendation falls squarely within the range of sanctions we have imposed in cases of similar misconduct. *E.g., In re Fuller,* 621 N.W.2d 460 (Minn.2001) (indefinite suspension for presenting false evidence and other violations); *In re Dvorak,* 620 N.W.2d 908 (Minn.2001) (1–year suspension for obstructing another party's access to evidence and other litigation misconduct); *In re Thedens,* 602 N.W.2d 863 (Minn.1999) (indefinite suspension for a minimum of 5 years for presentation of false evidence and discovery violations); *In re Orlins,* 574 N.W.2d 445 (Minn.1998) (disbarment for trust account violations and submission of false evidence); *In re Margolis,* 570 N.W.2d 688 (1–year suspension for forged retainer agreement and fabricated evidence); *Ganley,* 549 N.W.2d at 371 (6–month suspension for trust account violations and for alteration and false notarization of client affidavit); *In re Selmer,* 568 N.W.2d 702 (Minn.1997) (1–year suspension for discovery violations); *Jensen,* 542 N.W.2d at 633–34 (indefinite suspension for "harassing and frivolous litigation, neglecting professional obligations, and misrepresentations to judicial officers"); *In re Salmen,* 484 N.W.2d 253 (Minn.1992) (1–year suspension for false testimony).

The facts in this case are similar to those in *Ganley,* in which we imposed a 6–month suspension, the same penalty the referee recommended for Dedefo. *See* 549 N.W.2d at 371. In *Ganley,* the attorney, like Dedefo, had committed trust account violations involving negligent misappropriation of relatively small amounts ($120) of client funds, although Dedefo's infractions involved multiple clients and Ganley's only one. *See id.* at 369. Also, after receiving from a client a completed form seeking leave to file in forma pauperis, Ganley altered the client's income figure so that she would qualify for IFP status. *Id.* Ganley then notarized the form even though the client had not signed it in his presence and was not aware of the alteration. *Id.* This behavior is analogous to Dedefo's filing of the false affidavit: Dedefo improperly obtained a person's signature to an affidavit and used it to oppose a motion for summary judgment. Dedefo's case, however, involved the additional infraction of obstructing access to evidence.

In view of Dedefo's various acts of misconduct, we conclude that the appropriate sanction is indefinite suspension of his license to practice law in Minnesota. In so concluding, we are mindful of the fact that Dedefo's trust account violations caused no specific harm to Dedefo's clients. Although the trust account violations are serious, they would not by themselves likely warrant suspension. But Dedefo's other misconduct is more troubling. He has abused the legal process and thereby harmed the legal system. Further, the referee found that Dedefo "has refused to acknowledge the wrongful nature of his misconduct" at the deposition. He refused to acknowledge that his conduct in his deposition was discovery abuse, acknowledging only that "looking at the matter in hindsight, he might have handled it differently." Both at the referee hearing and before this court, Dedefo continued to vehemently deny abusing B.G. Dedefo used his abusive relationship with B.G. to file a false affidavit with the district court. Al-

though Dedefo cites as a mitigating factor his pro bono services to the Oromo ethnic community, his behavior inflicted substantial financial harm upon the defendants in his lawsuit, who are members of that very community.

We take dishonesty by lawyers seriously and have repeatedly held that a lack of truthfulness or candor warrants severe discipline. Therefore, we hereby suspend Dedefo's license to practice law indefinitely. Dedefo shall have no right to petition for reinstatement for 6 months from the date of this opinion. Dedefo shall comply with the requirements set forth in Rules 18(a)-(e) and 26, RLPR. Dedefo shall also pay $900 in costs pursuant to Rule 24(a), RLPR.

It is so ordered.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

DIETZEN, J., took no part in the decision of this case.